MICHAEL YERID & another *vs.* RUSSELL R. MASON & another.

Bristol.   October 5, 1960. — December 7, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Deceit.   Sale,* Rescission, Sale of real estate.

Statements made by the builder and owner of a completed house to prospective purchasers thereof, when the purchasers first visited the property and saw an opening on the inside of the cellar around the walls where the concrete floor had been broken away, that there was a water problem and he was putting in a drain to lead water collecting under the floor to a sump pump in the cellar and that this would keep the cellar floor dry, and, on the purchasers' second visit a few days later, that "they would have no further trouble with water," although amounting to assurances to the purchasers that completion of the drain would solve the difficulty, did not constitute false representations of fact entitling the purchasers to rescind the consummated sale by reason of flooding of the cellar whenever it rained.

BILL IN EQUITY, filed in the Superior Court on March 2, 1959.

The suit was heard by *Smith,* J., on the report of a master.

*Joseph Lipsitt,* for the defendants.

*Selwyn I. Braudy,* for the plaintiffs.

WILKINS, C.J.   The plaintiffs, husband and wife, purchased land and a dwelling house from the defendants, also husband and wife.   This bill in equity for rescission for alleged false representations as to water in the cellar was referred to a master, who filed a report, which was confirmed.   From a final decree ordering rescission, the defendants appealed.

The male defendant, to whom we shall refer as the defendant, built "ten or twelve" houses of the bungalow type on land owned by him in Acushnet.   With the exception of the plaintiffs' house and one other, none has a cellar.   This

is chiefly because of a water problem in the area, due in part to the fact that there is no drainage in the street. The defendant built the plaintiffs' house admittedly too low in relation to the grade of the street. To rectify this, he laid a course of eight inch cement blocks on top of the concrete walls.

After completing the house, the defendants experienced difficulty in selling because of the water condition in the cellar. When there was any appreciable amount of rain, the cellar became flooded. This was due to seepage through the walls of the foundation, at the window sashes, and tie rod holes, as well as to water rising from beneath the floor through cracks in the cement which had been caused by pressure. A sump pump, installed at a corner of the cellar, alleviated the pressure by pumping off water as it rose beneath the floor, but was not always able to cope with the problem.

About the middle of July, 1958, the plaintiffs first inspected the house. They saw an opening a foot wide on the inside around the cellar walls where the concrete floor had been broken away. The defendant said that there was a water problem, and that he was putting in a blind drain to correct it. He told the plaintiffs that the purpose of the pump was to draw off water which collected in the sump. He explained that the drain would pitch toward the pump, and that the surface water which collected under the floor would be drawn off, thus relieving the pressure. This, he said, would keep the floor dry. At the time there was water on the floor near the pump. The male plaintiff, to whom we shall refer as the plaintiff, said that his wife's health was not good, and that he wanted a dry cellar.

The defendant told the plaintiffs that he originally was asking $13,200, but that he would sell for $12,500. The plaintiff offered $12,000. On July 18 the defendant telephoned the plaintiff accepting the offer. On July 19, the plaintiffs, accompanied by their son, returned to the house. When in the cellar the defendant "again assured them they would have no further trouble with water." The plaintiffs

made a deposit, and a homemade agreement was signed by the plaintiffs and the defendants. On July 28 papers were passed. On August 5 the plaintiffs moved in. The defendant had filled in and cemented over the opening around the cellar walls, as he had promised. Shortly thereafter, the plaintiffs discovered that whenever it rained, the cellar floor became flooded. They observed that the pump worked almost continuously. On some occasions when the pump stopped, water rose as high as four inches on the floor.

The defendant knew of the water condition and its cause when he sold. Although he did not expressly guarantee that the cellar would be dry after he completed the drain, "he gave assurances to the plaintiffs that this would solve the difficulty." The plaintiffs relied upon this assurance and purchased the house which they otherwise would not have done. The defendant believed in good faith that he could eliminate most of the water that entered through the floor. The seepage that came through the sashes and tie rod holes and at the end of the beams was of minor importance in comparison with the water that came from the floor. These minor difficulties could be eliminated at a cost of not more than $75. The cost of correcting the entire condition in the cellar, including the floor, would be $900.

The plaintiffs' brief sets out as one of the facts that the defendant made a representation that the pump would be in operation only during the spring and fall months. This was not a finding of the master, but only a statement by him that such was the male plaintiff's testimony, and it was accompanied by the further statement that "This testimony was stoutly contradicted" by the defendant. It is no part of the case.

The substantial question is whether there was any misrepresentation, as distinguished from a statement promissory in character, for which the plaintiffs may be relieved of their contract. The test is the same as that applied in actions of tort for deceit. *Plumer* v. *Luce,* 310 Mass. 789, 801–802. *Golding* v. *108 Longwood Ave. Inc.* 325 Mass. 465, 467. In *Yorke* v. *Taylor,* 332 Mass. 368, where there was an

innocent misrepresentation as to the actual assessed value
of real estate, the general rule was stated at page 371, "In
this Commonwealth one who has been induced to enter into
a contract in reliance upon a false though innocent repre-
sentation of a material fact susceptible of knowledge which
was made as of the party's own knowledge and was stated
as a fact and not as matter of opinion is entitled to rescis-
sion." The cases cited were *Chatham Furnace Co.* v. *Mof-
fatt,* 147 Mass. 403 (a mass of iron ore under ground was
within the boundaries of the land covered by the defend-
ant's lease). *Bates* v. *Cashman,* 230 Mass. 167 (ownership
of right of way). *Rudnick* v. *Rudnick,* 281 Mass. 205 (rents
received from tenants). *Enterprises, Inc.* v. *Cardinale,* 331
Mass. 244 (rental of a suite). See, to the same effect, *Gold-
ing* v. *108 Longwood Ave. Inc.* 325 Mass. 465 (dimensions of
apartment rooms); *Bellefeuille* v. *Medeiros,* 335 Mass. 262
(available market price of cloth).

The chief difficulty lies in the language of the master's
report. He made findings as to several representations.
The parties had two conversations at the property. On the
plaintiffs' first visit the defendant was installing a drain
which he said would keep the floor dry. On their second
visit the defendant "again assured them they would have
no further trouble with water." By way of summary, as
we interpret the report, the master found that although the
defendant did not expressly guarantee that the cellar would
be dry after he completed the drain, "he gave assurances
to the plaintiffs that this would solve the difficulty." These
representations, in our opinion, resemble the statement of
the well digger that "there would be definitely no chance of
striking salt water," which in *Harris* v. *Delco Products,
Inc.* 305 Mass. 362, 365–366, was held "to amount to noth-
ing more than an expression of strong belief." We think
that the present case falls within the ordinary rule that
false statements of opinion, of conditions to exist in the
future, or of matters promissory in nature are not action-
able. See *Loughery* v. *Central Trust Co.* 258 Mass. 172,
175; *Ernest F. Carlson Co.* v. *Fred T. Ley & Co. Inc.* 269
Mass. 272, 277; *Coe* v. *Ware,* 271 Mass. 570, 573.

The plaintiffs lay great store by the recent decision in *Pietrazak* v. *McDermott, ante,* 107, where the defendant builder stated to a plaintiff buyer that "he built a good house and that there would be no water in the cellar." This statement was made when the house "was substantially completed" and was repeated "prior to passing papers." On the findings, the reference was to a completed building which, notwithstanding a puddle on the cellar floor, seems to have had no pending serious water problem. As was said at page 110, the builder's "assertion could reasonably have been understood . . . to mean that the construction of the house *was* such as to preclude the entrance of water" (italics supplied).

*Decree reversed.*
*Bill dismissed.*