### In re FIDELITY/APPLE SECURITIES LITIGATION.

No. CIV.A. 95–12724–RGS.

United States District Court,
D. Massachusetts.

Nov. 6, 1997.

market manipulation scheme orchestrated by defendants FMR Corporation ("FMR Corp."), Fidelity Management and Research Company ("FMR"), and Harry Lange, the portfolio manager of two of Fidelity's technology oriented mutual funds. Plaintiffs allege that the defendants violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) of the Securities and Exchange Commission ("SEC"). They also allege various common law torts.[1]

Defendants now seek dismissal of the Amended Complaint arguing that Lange made no public statements triggering a duty (if one exists) to disclose his trading strategy with respect to Apple shares held by the Fidelity defendants.

Glen DeValerio, Kimberly Masters Gaines, Berman, DeValerio & Pease, Boston, MA, Sherrie R. Savett, Gary E. Cantor, Berger & Montague, Philadelphia, PA, Kenneth G. Gilman, Gilman & Pastor, Boston, MA, for Plaintiffs.

John D. Donovan, Jr., Ropes & Gray, Boston, MA, James S. Dittmar, David R. DeVeau, Hutchins, Wheeler & Dittmar, Boston, MA, Joshua Levy, U.S. Atty's Office, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON FIDELITY DEFENDANTS' MOTIONS TO DISMISS

STEARNS, District Judge.

Plaintiffs filed this putative class action on behalf of all investors who purchased Apple Computer, Inc. ("Apple") stock between September 4, 1995 and September 14, 1995. They contend that they were victims of a

### FACTS

The facts alleged in the Amended Complaint are deemed for present purposes to be true. The proposed class consists of all persons who purchased Apple common stock on the open market between September 4, 1995 and September 14, 1995. Amended Complaint ¶ 5. FSCF invests in securities of companies that design, develop and manufacture computer hardware. *Id.* at ¶ 12. FSTF invests in a wide array of technology oriented companies. *Id.* at ¶ 13. Defendant FMR is the registered investment adviser for all Fidelity funds. *Id.* at ¶ 17. FMR provides shareholder and managerial services, making all trading decisions and handling the funds' communications with shareholders and the public. *Id.* at ¶ 17. FMR Corp. is FMR's parent company. *Id.* at ¶ 18. Harry Lange, an employee of FMR, is a Vice President and the portfolio manager for FSCF and FSTF. He is also the chief technology advisor to the Fidelity family of funds. *Id.* at ¶ 16.

---

1. Immediately prior to the hearing on the motion to dismiss, the parties stipulated the dismissal, without prejudice, of Fidelity Select Computer Fund ("FSCF"), Fidelity Select Technology Fund ("FSTF"), the Magellan Fund and John Doe Funds 1–25 (the "Mutual Fund Defendants") from this action. The following claims are asserted in the Consolidated and Amended Complaint against the remaining defendants, Lange, FMR Corp. and FMR: Count I—violations of § 10(b) of the Securities Exchange Act; Count II—violations of § 20(a) of the Securities Exchange Act; Count III—negligent misrepresentation; and Count IV—common law deceit and market manipulation.

As of June 30, 1995, 121,905,285 shares of Apple common stock had been publicly issued. According to a Schedule G filed with the SEC on or about July 7, 1995, as of June 30, 1995, FMR Corp. was the beneficial owner of 13,288,342 of these shares. As of September 30, 1995, FMR Corp. was the beneficial owner of 3,084,403 shares of Apple. Plaintiffs contend that the various Fidelity funds sold over 10 million shares of Apple—about 77% of the fund's Apple position—during September of 1995.[2]

The crux of the Amended Complaint is the allegation that the defendants

> prior to the beginning of the Class Period, embarked upon a deceptive scheme to manipulate the price of Apple [stock], and deceived the market into believing that Fidelity still favored Apple, thereby driving the price of Apple stock higher, while secretly unloading millions of shares of Apple stock at inflated and manipulated prices.

*Id.* at ¶ 41.

On September 4, 1995, *Barrons*, a widely circulated financial journal, published a feature article on Fidelity. The article described Lange as bullish on Apple and quoted him at length.

> Lange ... likes the prospects for Apple Computer. The key, he says, is switching their high-end Macintosh models to the PowerPC microprocessor from older Motorola chips. "The worry has been that Windows 95 would make Intel-driven PCs as easy to use as the Mac" he says. "But Apple, which had sold more expensive machines, has been able to close the gap on price performance. They've been sold out on their PowerPC models—demand is high, and supply is opening up.... Sales [of Apple's Macintosh computers] should pick up, even at retail. With more people flowing into retail stores due to Windows 95, a lot of people will choose Macs." Longer term, Lange thinks Apple could eventually sign up some big-name manufacturer to make Mac clones. Maybe a large Japanese manufacturer, like Fujitsu, or NEC.

> Or, perhaps, IBM. "Apple is IBM's largest customer," he [Lange] says. "They sell them drives and chips. It's in IBM's interest for Apple to do well. And IBM has access to the corporate market."

Amended Complaint ¶ 44.

The *Barrons* article also alluded to the fact that Fidelity was acutely aware of the market's interest in its trading activities.

> The markets scrutiny of Fidelity's maneuvering in technology clearly makes the higher-ups at the firm nervous. They have had tremendous success in the sector—for the year through Thursday, Fidelity Select Electronics had gained 87.5%, Select Technology, 49.4%, and Select computers, 62.9%; Magellan's up 36.4%. But were tech stocks to suffer a more serious decline, one that brought the rest of the market down with it, Fidelity could come in for some severe criticism—it's a possibility that keeps some Bostonians up at night. But the fact is, their chief tech expert remains solidly bullish.

*Id.* at ¶ 45.

Plaintiffs contend that Lange's statements were "materially false and misleading," in that Lange misrepresented and failed to disclose material adverse information concerning Fidelity's holdings of Apple stock, its trading in Apple shares, and its intentions with respect to its position in Apple thereby "intending to manipulate the market for Apple stock in order to secretly sell the bulk of Fidelity's Apple position at an inflated profit." *Id.*, at ¶ 60.

## LEGAL STANDARDS

When considering a motion to dismiss, "[w]e must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Vartanian v. Monsanto Company*, 14 F.3d 697, 700 (1st Cir.1994). The complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary

---

2. At oral argument, defendants' counsel represented that 90% of FMR's trading of Fidelity's Apple stock took place prior to August 31, 1995, or after the September 14, 1995 class period boundary. October 9, 1997 Hearing Tr., at 33.

to sustain a recovery under some actionable theory" *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir.1996), *quoting Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988). The court may disregard unsupported assertions and legal conclusions in its analysis. See *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1216 (1st Cir.1996).

■ Under Fed.R.Civ.P. 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Where securities fraud is alleged, the particularity requirements are even more stringent.

> [G]eneral averments of the defendants' knowledge of material falsity [of disclosures] will not suffice. Consistent with Fed.R.Civ.P. 9(b), the complaint must set forth specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading. The rule requires that the particular times, dates, places or other details of the alleged fraudulent involvement of the actors be alleged.

*Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994) (citations and internal quotation marks omitted). The First Circuit has "been especially rigorous in demanding such factual support in the securities context," *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991), particularly where the possibility exists that plaintiffs are seeking to use discovery as a settlement device rather than as a tool for marshalling evidence to support the merits of their claims. For this reason, heightened pleading is required "even when the fraud relates to matters peculiarly within the knowledge of the opposing party." *Id.* See

also *Lucia v. Prospect St. High Income Portfolio, Inc.*, 36 F.3d 170, 174 (1st Cir.1994).

## DISCUSSION

### Count I—Violations of § 10(b) of the Securities Exchange Act

■ To state a cause of action under section 10(b) and Rule 10b–5, a plaintiff must plead scienter, a material omission or misrepresentation, and detrimental reliance causing injury, all in connection with the purchase or sale of a security.[3] *Holmes v. Bateson*, 583 F.2d 542, 551 (1st Cir.1978). The law does not impose an affirmative duty to disclose material non-public information. *Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980). A company will be found liable under Rule 10b–5 only where it has affirmatively misled investors into purchasing its stock by publishing materially false or incomplete information. See generally *Shaw*, 82 F.3d at 1202; *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc); *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 26 (1st Cir.1987).

> [W]hen a corporation does make a disclosure —— whether it be voluntary or required —— there is a duty to make it complete and accurate. This, however, does not mean that by revealing one fact about a product, one must reveal all others, that, too, would be interesting, market-wise, but means only such others, if any, that are needed so that what was revealed would not be 'so incomplete as to mislead.'

*Gross v. Summa Four, Inc.*, 93 F.3d 987, 992 (1st Cir.1996) (citations omitted). Finally, to bring a defendant within reach of Rule 10b–5, a plaintiffs must allege a misleading or manipulative representation or omission at-

---

**3.** Section 10(b) prohibits the use "in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5 provides that:

> [i]t shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1987).

tributable to that defendant. See *Central Bank v. First Interstate Bank*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).[4]

■ The Amended Complaint alleges that Lange, in his dual capacity as an officer of FMR and as an agent of FMR Corp., made his statements about Apple to *Barrons*, knowing that they were false and misleading, and intending to deceive investors as to Fidelity's intentions regarding its holdings of Apple stock. The difficulty with this theory is that the statements attributed to Lange in the Amended Complaint are predictive and hedged against future contingencies. "Sales ... *should* pick up .... [and] a lot of people *will* choose Macs.... Apple *could* eventually sign up some manufacturer, like Fujitsu, or NEC. Or *perhaps*. IBM.... It's in IBM's interest for Apple to do well." Amended Complaint ¶ 44 (emphasis supplied). In none of the statements cited, does Lange discuss, much less mention Fidelity's trading activity or present or future intentions with respect to Apple. Nor does the Amended Complaint allege that Lange's statements were factually false. See *Glassman*, 90 F.3d at 626.

■ Plaintiffs also allege that "[b]y virtue of [its] size, its successful investment history, its large holdings of Apple securities, and its aggressive management style, which includes communicating with corporations to obtain information for its own use, Fidelity had access to non-public sources of material information regarding Apple." Amended Complaint ¶ 58. Plaintiffs cite a contemporaneous *San Francisco Chronicle* article reporting that "[s]cuttlebutt is that in recent weeks Fidelity Investments, which is Apple's largest investor with a 13.1% stake, has had some nasty conversation with the computer maker." *Id.*, at ¶ 52. If this is meant to allege insider trading on Fidelity's part, it falls well short of the mark. Corporate in-

siders are held to a fiduciary standard to protect uninformed investors from unfair exploitation. *Chiarella*, 445 U.S. at 229, 100 S.Ct. at 1115. A duty derivative of that imposed on insiders is also applied to "tippees," *SEC v. Maio.* 51 F.3d 623, 631–633 (7th Cir.1995), and to "scalpers" (ostensibly disinterested investment advisers recommending stocks without revealing their personal stake in the transaction). See *SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir.1985). But there are no factual allegations in the Amended Complaint that Fidelity received material "inside" information from Apple and traded on that information. See *Shaw*, 82 F.3d at 1203–1204.

■ It is also true, as plaintiffs insist, that a viable section 10(b) fraud-on-the-market claim can be plead without alleging the existence of a fiduciary relationship. See *In re Fidelity/Micron Securities Litigation*, 964 F.Supp. 539, 546 (D.Mass.1997). A fraud-on-the-market claim is based on the assumption that "in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations." *Basic Inc. v. Levinson*, 485 U.S. 224, 241–242, 108 S.Ct. 978, 988–989, 99 L.Ed.2d 194 (1988), *quoting Peil v. Speiser*, 806 F.2d 1154, 1160–1161 (3d Cir.1986). In a fraud-on-the-market case

the statements identified by plaintiffs as actionably misleading are alleged to have caused injury, if at all, not through the plaintiffs' direct reliance upon them, but by dint of the statements' inflating effect on

**4.** The issue in *Central Bank v. First Interstate Bank*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), was whether section 10(b) covered persons who aid and abet a securities violation. The Court concluded that the statute prohibits "only the making of a material misstatement (or omission) or the commission of a manipulative act," and therefore applied only to those who in fact engage in prohibited conduct, whether "di-

rectly or indirectly." *Id.* at 176–177, 114 S.Ct. at 1447–1448. "Only primary violators, i.e., those who *make* a material misstatement or omission or commit a manipulative act, are subject to private suit under Section 10(b)." *In re Kendall Square Research Corporation Securities Litigation*, 868 F.Supp. 26, 28 (D.Mass.1994) (emphasis in original).

the market price of the security purchased. When the truth is disclosed and the market self-corrects, investors who bought at the inflated price suffer losses. Those losses can be deemed to have been caused by the defendants' statements, even absent direct reliance by plaintiffs, because the statements were presumptively absorbed into and reflected by the security's price.

*Shaw,* 82 F.3d at 1218 (internal citations omitted). However, a statement must be factual and specific to perpetrate a fraud-on-the-market.

> Analysts and arbitrageurs rely on facts in determining the value of a security, not mere expressions of optimism ... The market gives the most credence to those predictions supported by specific statements of fact, and those statements are, of course, actionable if false or misleading. However, "projections of future performance not worded as guarantees are generally not actionable under the federal securities laws." *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1446 (5th Cir.1993) (quoting *Friedman v. Mohasco Corp.,* 929 F.2d 77 (2d Cir.1991)).

*Raab v. General Physics Corp.,* 4 F.3d 286, 290 (4th Cir.1993). Lange's statements fall clearly into this latter category.

A second test of materiality in a fraud-on-the-market case is an obvious one, whether the alleged misrepresentation in fact had an effect on the market. The Amended Complaint, however, concedes that no significant rise (or fall) in the price of Apple shares was precipitated by the publication of Lange's statements. Rather, the drop-off in the price of Apple shares came when Apple, after the close of business on September 14, 1995,

> issued a press release in which it warned investors that its September quarterly earnings, plagued by product delays and component shortages, would fall well below analysts' estimates. In addition, Apple stated that it was recalling its new line of high-end laptop computers. In response to these announcements, Apple fell 4 1/8, or 10%, to 35 7/8. Notably, in the day

preceding Apple's announcement, the trading in Apple stock was exceptionally heavy. Amended Complaint ¶ 51.

While plaintiffs maintain that defendants waived the heightened pleading strictures of Fed.R.Civ.P. 9(b) for purposes of this motion, see October 9, 1997 Hearing Tr., at 38, the factual allegations of the Amended Complaint are insufficient to survive even the less rigorous standards of 12(b)(6). The defendants' motion to dismiss Count I will therefore be *ALLOWED.*

### Count II—Section 20(a)—Control Person Liability

Count II of the Complaint alleges violations of section 20(a) of the Securities Exchange Act. Section 20(a) authorizes a cause of action against any individual who exerts direct or indirect control over a corporation that acts in violation of the securities laws. Plaintiffs allege that FMR Corp., as the controlling shareholder of FMR, exercised its power over FMR and Lange to cause them to engage in securities violations. Plaintiffs also claim that FMR (through Lange) exerted like power and control over the Fidelity family of funds. However, because the Amended Complaint fails to plead facts sufficient to sustain a primary securities law violation under Rule 10b, there can be no concatenate section 20(a) claim. Therefore the defendants' motion to dismiss Count II of the Amended Complaint will be *ALLOWED.*

### State Law Claims—Count III (Negligent Misrepresentation) and Count IV (Deceit)

■ The plaintiffs allege in Count III that the statements attributed to Lange by *Barrons* constitute negligent misrepresentation and deceit under Massachusetts law. To sustain a claim of negligent misrepresentation, a plaintiff must show either privity between the parties or a defendant's actual knowledge of a plaintiff's reliance on the misrepresentation. *Van De Velde v. Coopers & Lybrand,* 899 F.Supp. 731, 739 (D.Mass. 1995). Plaintiffs have not plead privity or actual knowledge, only that "[s]uch reliance ... [was] reasonably foreseeable by the defendants." Amended Complaint ¶ 75. This does not state a cause of action under Massachusetts law.

Moreover, mere opinions, predictions about future events, and statements that are true when made, are not actionable as misrepresentations under Massachusetts law. See *Morgan v. Financial Planning Advisors, Inc.*, 701 F.Supp. 923, 927 (D.Mass. 1988) (statement true when made); *Yerid v. Mason*, 341 Mass. 527, 530, 170 N.E.2d 718 (1960) (false statements of opinion); *Commonwealth v. Quinn*, 222 Mass. 504, 513, 111 N.E. 405 (1916) (as opinion as to value not ground for civil liability cannot constitutes criminal offense); *McCartin v. Westlake*, 36 Mass.App.Ct. 221, 230 n. 11, 630 N.E.2d 283 (1994) (future business plans); *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 79, 575 N.E.2d 70 (1991) (misrepresentation must be based on fact not expectation, estimate, opinion or judgment). Compare *Starr v. Fordham*, 420 Mass. 178, 187, 648 N.E.2d 1261 (1995) (a statement that misrepresents a speaker's present intention as to his future conduct is actionable).

Count IV of the Amended Complaint alleges deceit. "To sustain a claim of (affirmative) misrepresentation, a plaintiff must show a false statement of material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." *Zimmerman*, 31 Mass.App.Ct. at 77, 575 N.E.2d 70 (1991). A duty of disclosure may also arise on the uttering of a half-truth, where a defendant has affirmatively prevented the plaintiff from discovering the truth on his own, where the parties stand in a fiduciary relationship, or where the plaintiff is in a position of dependence on the defendant. *Swinton v. Whitinsville Sav. Bank*, 311 Mass. 677, 678–679, 42 N.E.2d 808 (1942). See also *Restatement (Second) of Torts*, § 551 (1976). When a seller merely knows a weakness in the subject of a sale and does not bring it to the buyer's attention, "[s]uch nondisclosure does not amount to fraud and is not a conventional tort of any kind." *Greenery Rehabilitation Group, Inc. v. Antaramian*, 36 Mass.App.Ct. 73, 77, 628 N.E.2d 1291 (1994).

There is no cause of action under Massachusetts law without a showing of reliance on the fraudulent representation. *Bishay v. Foreign Motors, Inc.*, 416 Mass. 1, 12, 616 N.E.2d 96 (1993); *Nei v. Burley*, 388 Mass. 307, 311, 446 N.E.2d 674 (1983). While Massachusetts has not adopted the fraud-on-the-market theory espoused by the Supreme Court in *Basic*, supra, plaintiffs maintain that they did rely on Lange's statements in deciding to purchase their stock. Amended Complaint ¶ 82. However, there are no factual allegations that Lange's statements were false, which is also an essential element of deceit. *Fox v. F & J Gattozzi Corp.*, 41 Mass.App.Ct. 581, 587, 672 N.E.2d 547 (1996).

### *ORDER*

For the foregoing reasons, defendants' motion to dismiss Counts I, II, III and IV of the Amended Complaint is *ALLOWED.*

SO ORDERED.