**LASER LABS, INC., Plaintiff,**

v.

**ETL TESTING LABORATORIES, INC.,[1] a subsidiary of Inchcape Testing Laboratories, Inc., Defendant.**

**Civil Action No. 97–11482–GAO.**

United States District Court, D. Massachusetts.

Nov. 25, 1998.

---

1. For the sake of continuity in this case, the defendant will be referred to as ETL Testing Laboratories, Inc. ("ETL") although its successor corporation, Intertek Testing Services NA Inc., was named as the defendant in the Second Amended Complaint.

Lawrence M. Siskind, Charles Michael Tobin, Brockton, MA, Charles Michael Tobin, Boston, MA, for plaintiff.

Jonathan M. Ettinger, Foley, Hoag & Eliot, Boston, MA, Richard B. Thaler, Jennifer K. Constance, Thaler & Thaler, Ithaca, NY, for defendant.

## MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The plaintiff Laser Labs, Inc. ("Laser Labs"), a Massachusetts corporation, brought suit against the defendant ETL Testing Laboratories, Inc., a subsidiary of Inchcape Testing Laboratories, Inc. ("ETL"), a New York corporation, asserting a number of theories of recovery. The Court has previously dismissed two counts for failure to state a claim upon which relief can be granted. The defendant now moves for summary judgment on the remaining three claims: interference with advantageous business relations (Count II), common law fraud and deceit (Count III), and violation of the covenant of good

faith and fair dealing (Count V). For the reasons set forth in this memorandum, ETL's motion is GRANTED and this case is DISMISSED with prejudice.

## FACTS [2]

Laser Labs manufactures photometers which, among other uses, can measure light transmittance through glass. As part of mandatory automobile inspections, North Carolina requires a measurement of the degree of window tinting in cars, and official automobile inspection stations must use approved photometers to conduct the tests. In 1995, the North Carolina Department of Motor Vehicles retained ETL to conduct independent testing of photometer devices to be offered for sale to such inspection stations. In accordance with North Carolina regulations, Laser Labs submitted its "Model 300" photometer for testing by ETL. North Carolina determined what the specifications for approval would be and determined, after testing, whether each tested photometer complied with the regulatory requirements. ETL reported test results directly to the Department of Motor Vehicles, which then informed the photometer manufacturers of the results. Laser Labs and two other photometer manufacturers paid ETL directly for the testing service. Of the three models tested, only Laser Labs' Model 300 failed to receive regulatory approval. As a result, Laser Labs has been not been able to represent that the Model 300 is "approved" by North Carolina.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

" 'Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.' " *Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 327 (1st Cir. 1996) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

## Count II: *Intentional Interference with Advantageous Business Relations*

Massachusetts law requires a plaintiff to plead and prove four elements to make out a claim for intentional interference with prospective business relations: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such a relationship; (3) the defendant's intentional and improper interference with it; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct. *See United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 551 N.E.2d 20, 23 (Mass.1990). The claim in this case apparently is that by conducting its testing unfairly, the defendant wrongfully interfered with Laser Labs' ability to sell its photometers in North Carolina. Laser Labs has alleged that it had established advantageous business relationships with "several customers" in North Carolina (Compl.¶ 32), but it has failed to offer evidence to establish the existence of any specific relationships. It has offered no more than a copy of an advertising flyer it produced and sent out in two mass mailings (Tobin Aff. Ex. B), and a statement that it had received "numerous" inquiries about Laser Labs' reasonably priced product in response to the mailing. (Poh Aff. ¶ 12).

The plaintiff's definition of "advantageous relations" for these purposes is too expansive. It appears that the plaintiff's theory is that the existence of a potential market for a

---

2. For purposes of summary judgment, the Court reviews the record and draws all reasonable inferences from the record in a light most favorable to the non-moving party, here, Laser Labs. *Commonwealth v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 986 (1st Cir.1995). In this case, Laser Labs' response to ETL's Concise Statement of Material Facts purports to place in dispute, in

whole or in part, fourteen of the defendant's twenty-four statements of undisputed fact. However, the plaintiff provides citations to record evidence for only one of these alleged disputes. Since Local Rule 56.1 requires the nonmoving party to provide record citations for facts it claims are in dispute, this Court may, and does, disregard plaintiff's unsupported assertions.

company's product is sufficient to create a prospective advantageous relationship with each potential customer in that market. Massachusetts does not interpret this tort to reach so far. The plaintiff has not identified any case in which a court applying Massachusetts law has allowed a claim for intentional interference with advantageous business relations where the business relationship said to have been interfered with was as inchoate as alleged here. General inquiries in response to a mass mailing do not create a "prospective business relationship" sufficient to satisfy the first element of this tort. Moreover, there is nothing in the record that would support a factfinder's conclusion that any unfair testing by the defendant was intended to interfere with any such prospective relationships. *See Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811, 816 (Mass.1982) (outlining elements of tort).

### Count III: *Fraud and Deceit*

■ The crux of the plaintiff's fraud and deceit claim is its assertion that ETL falsely represented to the Department of Motor Vehicles that the plaintiff's product failed to comply with applicable North Carolina regulations. (Pl's. Mem. in Opp'n to Def.'s Mot. for Summ. J, at 8–9). There is no allegation or evidence of any false representations made to, or relied on by, Laser Labs. That omission is enough to dispose of this count.

Moreover, the undisputed evidence shows that the tests performed by ETL on plaintiff's product were designed by the North Carolina authorities, and that they alone decided whether the results of the tests supported a conclusion of compliance or noncompliance with the regulations. (Def.'s Concise Statement of Material Facts ¶¶ 6–7, 12–14, 17–18). ETL's reports on its testing of Laser Labs' product to the Department of Motor Vehicles indicated whether plaintiff's product passed or failed each of several tests, following the parameters set by the Department, but did not purport to advise the Department on what the parameters should be. (*Id.* ¶¶ 16, 14, 17–18). The plaintiff has not offered evidence to show that the ETL reports did not accurately indicate whether the plaintiff's product was within or without the parameters; rather, the plaintiff's main claim is that the parameters themselves were selected to ensure Laser Labs' failure. (Pl's Opp'n to Def.'s Mot. for Summ. J., at 8–9). That is a complaint properly directed to the selector of the parameters, North Carolina, rather than ETL.

### Count V: *Violation of the Covenant of Good Faith and Fair Dealing*

■ The plaintiff also urges that ETL violated the covenant of good faith and fair dealing implied in any contract under Massachusetts law. *See e.g., Anthony's Pier Four v. HBC Assocs.,* 411 Mass. 451, 583 N.E.2d 806, 820–21 (Mass.1991). In order to show breach of the covenant, the plaintiff must show that there existed an enforceable contract between the two parties and that the defendant did something that had " 'the effect of destroying or injuring the right of [the plaintiff] to receive the fruits of the contract.' " *Id.* at 820 (quoting *Druker v. Roland Wm. Jutras Assocs.,* 370 Mass. 383, 348 N.E.2d 763, 765 (Mass.1976)); *see also James L. Miniter Ins. Agency v. Ohio Indem. Co.,* 112 F.3d 1240, 1249–50 (1st Cir. 1997); *FDIC v. Le Blanc,* 85 F.3d 815, 822 (1st Cir.1996).

■ To demonstrate a breach of the covenant, the plaintiff points to reports from ETL to the Department of Motor Vehicles of the results of the photometer testing. (Tobin Aff. Exs. C–H, at 21 [each exhibit] ). The plaintiff argues that in one crucially important test, Laser Labs was held to an accuracy standard allowing a margin of only +/−1%, while its competitors' photometers were allowed a +/−3% margin. (Tobin Aff. Exs. C–H at 21 [each exhibit] ). In other words, Laser Labs was unfairly held to a much more rigorous standard than the others. The difficulty is that Laser Labs' photometer *passed* those tests. Whatever unfairness there was had no adverse impact on the outcome of the testing as a whole. Rather, the failure of the plaintiff's photometer resulted from other tests, not challenged as unfair. Since Laser Labs can show no injury from any breach of a covenant of fair dealing, it has no remedy under that theory.

## CONCLUSION

For these reasons, the defendant's motion for summary judgment is GRANTED and the action is DISMISSED.