**LEARNING EXPRESS, INC., Plaintiff,**

v.

**RAY–MATT ENTERPRISES, INC. t/a Learning Express, Matthew Hanratty and Judith A. Hanratty, Defendants.**

**No. Civ.A. 99–1 372–WGY.**

United States District Court,
D. Massachusetts.

Nov. 12, 1999.

Frank J. Teague, Mills & Teague, Boston, MA, Arthur L. Pressman, Buchanan Ingersoll, P.C., Philadelphia, PA, for Learning Express, Inc, plaintiff.

Lynn A. Moretti, McDermott, Quilty & Miller LLP, Boston, MA, Mitchel S. Ross, Sweder & Ross LLP, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

This diversity action arises out of a 1996 franchise agreement (the "Agreement") between Learning Express, Inc. ("Learning Express") and Ray–Matt Enterprises, Inc. ("Ray–Matt") to operate an educational toy store in New Jersey. Learning Express, the franchisor, alleges that Ray–Matt defaulted on the Agreement and seeks a corresponding declaratory judgment. In turn, Ray–Matt and its sole shareholders, Matthew and Judith Hanratty (the "Hanrattys"), filed an eight-count Counterclaim that essentially avers that Learning Express failed to live up to its end of the Agreement as a result of inadequate training, guidance, and support.

Learning Express moved to dismiss each count of the Counterclaim for (i) failure to state a claim and (ii) insufficient particularity. In addition, Learning Express challenged the Hanrattys' standing to assert claims in their own name. This memorandum and order serves both to explain the Court's reasoning for dismissing certain elements of the case from the bench during oral argument and to rule on the few claims taken under advisement.

### II. FACTS DERIVED FROM THE COUNTERCLAIM

In early 1996, the Hanrattys became interested in purchasing a franchise business that could accommodate them as individuals with no prior retail experience. *See* Countercl. ¶¶ 4–6. Through the use of a franchise locating service, the Hanrattys selected Learning Express—which specialized in educational toys—and met with its regional representative William Moore ("Moore"). *See id.* at ¶¶ 6–8. In response to the Hanrattys' concerns, Moore explained that his extensive retail experience and knowledge of Learning Express would allow him to help the Hanrattys select an appropriate site and provide the necessary support for operating the franchise. *See id.* at ¶¶ 11–12. Based on Moore's assurances, the Hanrattys traveled to Massachusetts to discuss the franchise opportunity with Sharon DiMinico ("DiMinico"), Learning Express' president and owner. *See id.* at ¶ 14. After the Hanrattys again relayed their lack of retail experience, DiMinico praised Moore's experience and abilities and assured the Hanrattys that Moore would provide the necessary training, knowledge, and location selection assistance. *See id.* at ¶¶ 15–16. The Hanrattys incorporated Ray–Matt and it subsequently entered into the Agreement with Learning Express. *See id.* at ¶¶ 17, 19.

With the approval of Moore, Ray–Matt negotiated a lease with the Colonial Square Shopping Center in Greenbrook, New Jersey for a Learning Express store and borrowed approximately $215,000 to begin operations. *See id.* at 18. It became readily apparent, however, that Moore was unable to provide the promised support, *see id.* at ¶¶ 20–24, having approved a site that even Learning Express considered "a poor location, lacking certain essentials ...," *id.* at ¶ 24. DiMinico and Learning Express offered no support and blocked the Hanrattys' attempt to relocate the store, *see id.* at ¶¶ 21, 24, 26, and went so far as to establish another Learning Express store in a neighboring New Jersey location. *See id.* at ¶ 50.

### III. THE COUNTERCLAIM

In response to Learning Express' complaint, Ray–Matt and the Hanrattys (collectively, the "Franchisees") filed an eight-count Counterclaim. Count I seeks a dec-

laration that (i) the Franchisees are protected by the New Jersey Franchise Practices Act (the "Franchise Act"), N.J.Stat. Ann. § 56:10–1 et seq., and (ii) Learning Express has "constructively terminated" the Agreement. Count II alleges that Learning Express knowingly and intentionally breached the covenant of good faith and fair dealing. Based on the unrealized assurances of DiMinico and Moore, Count III alleges fraud and deceit. Count IV avers that the alleged constructive breach by Learning Express constitutes a theft by unlawful taking or disposition in violation of N.J.Stat.Ann. § 2C:20–3. Count V alleges that Learning Express engaged in unfair trade practices. Count VI alleges tortious interference with contractual relations, a breach of the covenant of good faith and fair dealing, and a theft by unlawful taking or disposition in violation of N.J.Stat.Ann. § 2C:20–3.[1] Count VII alleges negligence by Learning Express. Finally, Count VIII states that Learning Express perpetrated consumer fraud in violation of N.J.Stat.Ann. § 56:8–1 et seq.

## IV.  ANALYSIS

### A.  Choice of Law

Before delving into the specifics of the Counterclaim, the Court must first determine what law it ought apply. Although the Court applies New Jersey law to those claims brought under specific New Jersey statutes, the Franchisees' remaining claims all essentially arise out of the Agreement, and according to the Agreement's choice-of-law provision, "will be governed by and interpreted by the laws of the Commonwealth of Massachusetts."

Compl., Ex. A, § 16.06.  *See Lambert v. Kysar*, 983 F.2d 1110, 1118 (1st Cir.1993) (stating that Massachusetts courts "routinely enforce choice-of-law provisions unless the law chosen violates established public policy or bears no reasonable relationship to the contractual transaction between the parties").

### B.  The Hanrattys' Standing

■ As a second preliminary matter, Learning Express contends that, as mere shareholders, the Hanrattys lack standing to bring any claims arising under the Agreement. In response, the Hanrattys correctly argue that even though they are not signatories to the Agreement, they are afforded protection under the Franchise Act and thus have standing to seek a declaration under Count I. *See, e.g., Westfield Centre Serv., Inc. v. Cities Serv. Oil Co.*, 86 N.J. 453, 432 A.2d 48, 50 (1981) (considering action brought under Franchise Act by corporate franchisee *and* its sole shareholder in his individual capacity); *Atlantic City Coin & Slot Serv. Co., Inc. v. IGT*, 14 F.Supp.2d 644, 646 (D.N.J.1998) (same). With respect to all other counts, however, the Hanrattys cannot overcome the "longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990).

■ The Hanrattys rely upon "an exception to this rule allowing a shareholder

---

1. Paragraph 63 of Count VI states that Learning Express "has intentionally prevented defendants from meeting their contractual sales and service quotas and being able to pay on a current basis their required franchise fees." Countercl. ¶ 63. Learning Express reads this allegation as ineffectively asserting a claim for breach of contract. *See* Pl.Mem. at 18. Paragraph 63 is, however, more appropriately interpreted as a misplaced statement of the

contractual avoidance doctrine, *see Peabody N.E., Inc. v. Town of Marshfield*, 426 Mass. 436, 441, 689 N.E.2d 774 (1998) ("[A] breach caused solely by the other party's behavior is generally excused...."). Pursuant to its discretion under Fed.R.Civ.P. 8(c), the Court thus treats the mistakenly designated counterclaim as an avoidance to Learning Express' breach of contract claims.

with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated," *id.*, in that they were personally injured by Learning Express' statements, conduct, and purported breach of duties. However, as stated in a Fifth Circuit opinion relied upon by both parties, "[t]hat exception to the general rule does not arise ... merely because the acts complained of resulted in damage both to the corporation and to the stockholder, but is confined to cases where the wrong itself amounts to a breach of duty owed to the stockholder personally." *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir.1968). Although it appears that Ray–Matt is nothing more than a shell corporation, the Counterclaim fails fairly to allege that Learning Express' actions breached any duties personally owed to the Hanrattys. Accordingly, with respect to Counts II through VIII, the Court granted the motion to dismiss the claims brought by the Hanrattys in their individual capacities.

### C. *Count I—Declaration Under Franchise Act*

▪ Count I of the Counterclaim seeks a declaration that Learning Express "constructively terminated" Ray–Matt's franchise in violation of section 5 of the Franchise Act. *See* N.J.Stat.Ann. § 56:10–5 ("It shall be a violation of this act for a franchisor to terminate, cancel or fail to renew a franchise without good cause."). Learning Express contends that the Franchise Act does not apply to the Ray–Matt franchise. According to New Jersey law, the Franchise Act

> applies only to a franchise (1) the performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) *where gross sales of products or services between the fran-*

chisor and franchisee covered by such franchise shall have exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise....

*Id.* at § 56:10–4 (emphasis added). As a matter of fairness, however, where a business terminates prior to the initiation of suit, the Supreme Court of New Jersey instructs courts to look to gross sales from the last twelve months of operations. *See Tynan, L.T. v. General Motors Corp.*, 127 N.J. 269, 604 A.2d 99, 100 (1992) (adopting dissent of appellate court judge below). The parties thus contend that the applicability of the Franchise Act in the case at bar turns on whether the Court examines annual gross franchise sales backwards from the date of suit or, through a strained application of *Tynan*, from the date of the alleged "constructive termination."

▪ Although the application of N.J.Stat.Ann. § 56:10–5 in the context of an alleged constructive termination poses interesting questions of interpretation, the Court need not—and does not—reach that issue. Rather, the Court rejects the Franchisees' claim under the Franchise Act outright because they have failed to demonstrate $35,000 of gross franchise sales *at any time*. *See United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir.1992) ("[T]he facts necessary to support standing must clearly appear in the record and cannot be inferred argumentatively from averments in the pleadings."). The Franchisees' only allegation of gross franchise sales, i.e., gross sales of products or services between the franchisor and franchisee, is the expenditure of $30,000 to purchase the franchise rights from Learning Express sometime in 1996.[2] *See* Coun-

---

**2.** As evidence of franchise sales, the Franchisees state that they "invested approximately $215,000.00 into this franchise when it was acquired from Learning Express." Def. Opp.Mem. at 7. A careful reading of the

Counterclaim reveals, however, that only $30,000 went to Learning Express; with the remaining $185,000, the Franchisees "purchased computers, purchased fixtures and other tenant fit-up items for the store, pur-

tercl. ¶¶ 17, 19. The Franchisees' claim thus fails to satisfy the purpose of the $35,000 minimum, i.e., "to restrict the application of the Act to franchises that [are] sufficiently consequential to the franchisee to merit protection." *Tynan, L.T. v. General Motors Corp.*, 248 N.J.Super. 654, 591 A.2d 1024, 1035–36 (App.Div.1991) (Cohen, J., dissenting), *dissent adopted*, 127 N.J. 269, 604 A.2d 99, 100 (1992). This Court therefore granted Learning Express' motion to dismiss Count I in its entirety.

**D.** *Count II—Covenant of Good Faith and Fair Dealing*

■ In Count II, Ray–Matt alleges that Learning Express breached an express or implied covenant of good faith and fair dealing in the Agreement. As to this Count, the Court applies the law of Massachusetts. A covenant of good faith and fair dealing exists in every Massachusetts contract, *Starr v. Fordham*, 420 Mass. 178, 184, 648 N.E.2d 1261 (1995), and requires "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Blank v. Chelmsford Ob/Gyn, P.C.*, 420 Mass. 404, 407, 649 N.E.2d 1102 (1995) (internal quotation omitted). Accordingly, "to show breach of the covenant, the plaintiff must show that there existed an enforceable contract between the two parties and that the defendant did something that had the effect of destroying or injuring the right of [the plaintiff] to receive the fruits of the contract." *Laser Labs, Inc. v. ETL Testing Lab., Inc.*, 29 F.Supp.2d 21, 24 (D.Mass.1998) (O'Toole, J.) (internal citations and quotation marks omitted).

Although both parties admit that the Agreement constitutes an enforceable contract, Learning Express contends that Ray–Matt's Counterclaim fails to allege what Learning Express "did" to interfere with the Agreement. A fair reading of Count II, however, reveals allegations that Learning Express failed "in every respect" (i) to give guidance and help to the Hanrattys, and (ii) to properly guide the Hanrattys in selecting a location. Countercl. ¶ 38. Such purported failures directly interfered with Ray–Matt's rights under the Agreement. *See* Compl., Ex. 1, §§ 9.01, 9.02, 9.04 (describing training and assistance to be provided); *id.*, at §§ 3.01, 9.03(B) (describing site selection assistance to be provided). The Court thus denies Learning Express' motion to dismiss Count II of the Counterclaim.[3]

**E.** *Count III—Fraud and Deceit*

In Count III of the Counterclaim, Ray–Matt avers that Learning Express made "misrepresentations, false promises, and fraudulent statements to the Hanrattys with the intent that the Hanrattys and Ray–Matt rely on those statements." Countercl. ¶ 42. Learning Express moves to dismiss Count III for failure to (i) state a claim upon which relief may be granted, and (ii) plead fraud with the particularity required by Fed.R.Civ.P. 9(b).

**i.** *Failure to State a Claim*

Without any genuine analysis of Massachusetts choice of law considerations, the parties appear to assume that Massachusetts law governs this tort (fraud in the inducement) claim. At this stage, this Court makes the same assumption since, as will be seen, nothing presently turns on the point.

Under Massachusetts law, the specific elements of a cause of action for fraud and deceit "include proof that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon

chased carpeting, purchased a sign and to purchase inventory and other miscellaneous items." Countercl. ¶ 19.

3. Pursuant to Fed.R.Civ.P. 12(f), however, the Court strikes that portion of Count VI that redundantly asserts a claim for a breach of the covenant of good faith and fair dealing.

the representation as true and acted upon it to his damage." *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703, 322 N.E.2d 768 (1975) (internal quotation omitted). "[F]alse statements of opinion, of conditions to exist in the future, or of matters promissory in nature," however, do not qualify as representations of material fact. *See Yerid v. Mason*, 341 Mass. 527, 530, 170 N.E.2d 718 (1960). Learning Express contends that the statements upon which Ray–Matt claims to have relied are non-actionable opinion because (i) the statements could not "reasonably be interpreted as an absolute promise," Pl.Mem. at 14, or (ii) the statements could not "reasonably be interpreted as a fact because, as the Franchise Agreement sets forth, such statements would not have been susceptible of exact knowledge at the time they were made," *id.* Even if the Court interprets the alleged statements as a promise, Learning Express contends that Ray–Matt's reliance was not reasonable because the statements conflicted with the Agreement.

■ Notwithstanding these arguments, the Court interprets several of the statements that Learning Express is alleged to have made during negotiations with Ray–Matt as promises or factual assertions. For instance, Ray–Matt alleges that Moore stated that "he *would be able* to provide the necessary support to allow the Hanrattys to establish a Learning Express franchise retail store in New Jersey and to make it a success." Countercl. ¶ 11 (emphasis added). Likewise, Moore allegedly "assured the Hanrattys that he *would be able* to assist in selecting a location that would support a Learning Express Franchise." *Id.* at ¶ 12 (emphasis added). DiMinico similarly stated that "Moore was experienced and *was able* to assist [the Hanrattys] in finding an appropriate location, as well as provide them with the training and knowledge necessary to open and successfully operate a Learning Express franchise." *Id.* at ¶ 16 (emphasis added).

■ Having determined that Ray–Matt has alleged actionable statements, the Court must consider whether Ray–Matt's reliance on such statements was reasonable. Learning Express contends that the statements conflict with, and are thus trumped by, the terms of the Agreement. Although Learning Express correctly states the law, *see Starr*, 420 Mass. at 188, 648 N.E.2d 1261 ("[I]f the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue."), it incorrectly asserts that the alleged statements were inconsistent with the provisions of the Agreement. For example, the alleged statements promising training and support by Moore are consistent with several of the Agreement's provisions concerning "Training and Assistance." *See generally* Compl., Ex. 1, § 9. Likewise, the Agreement's discussion of Learning Express' required assistance with site selection concurs with the alleged assurances by Moore and DiMinico. *See id.* at §§ 3.01, 9.03(B).

### ii. *Failure to Satisfy Fed.R.Civ.P. 9(b)*

■ Rule 9(b) of the Federal Rules of Civil Procedure states that "[i]n all averments of fraud … the circumstances constituting fraud … shall be stated with particularity." Fed.R.Civ.P. 9(b). As this Court has had occasion recently to explain yet again, Rule 9(b) "requires that the particular times, dates, places or other details of [the] alleged fraudulent involvement of the actors be alleged." *Swartz v. Schering–Plough Corp.*, 53 F.Supp.2d 95, 104 (D.Mass.1999) (internal quotation omitted). Although Ray–Matt's Counterclaim describes with particularity the speaker, their statements, and where the statements were made, the pleadings omit any mention of time or date other than the general statement that "[o]n or about January, 1996, the Hanrattys became interested in locating a franchise business to pur-

sue." Countercl. ¶ 4. This deficiency, which Ray–Matt can likely cure by amendment, is fatal to Count III. *See, e.g., Whelan v. Intergraph Corp.,* 889 F.Supp. 15, 19 (D.Mass.1995) (Lindsay, J.) (dismissing fraudulent misrepresentation claim that failed to state time of allegedly fraudulent statements even considering allegations in briefs that statements were made "prior to April 20, 1992"). Consequently, even though Ray–Matt has apparently stated a claim upon which relief may be granted, the Court granted the motion to dismiss Count III for failing to meet the requirements of Fed.R.Civ.P. 9(b) with leave to file a motion to amend within thirty days of the date of this memorandum and order.[4]

### F. Count IV—Theft By Unlawful Taking or Disposition

■ Under Count IV of the Counterclaim, Ray–Matt asserts a claim for theft by unlawful taking or disposition in violation of N.J.Stat.Ann. § 2C:20–3 (the "Theft Statute"). The Theft Statute, a provision of the New Jersey Criminal Code, states that "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, ... property of another with purpose to deprive him thereof." N.J.Stat.Ann. § 2C:20–3. Unfortunately for Ray–Matt, the New Jersey courts have not created a private right of action for violations of the Theft Statute and thus, even if Learning Express' alleged actions rise to the level of a crime, Ray–Matt

possesses no civil remedies under the statute. Although Ray–Matt contends that its "reference" to the Theft Statute can be used to establish the standard of care in a tort action, i.e., negligence per se, *see* Def. Opp.Mem. at 12, the Counterclaim clearly attempts to state an independent private right of action for violation of the statute and the Court thus granted the motion to dismiss Count IV.[5]

### G. Count V—Unfair Trade Practices

In Count V of its Counterclaim, Ray–Matt asserts that Learning Express engaged in unfair trade practices by (i) blocking Ray–Matt's attempt to move its franchise from the Colonial Square Mall after being informed by Learning Express that the mall was not an acceptable location, Countercl. ¶¶ 55–56, and (ii) breaching the covenant of good faith and fair dealing, *id.* at ¶¶ 37–39, 54, 59.[6] By the instant motion, Learning Express simply contends that the unfair trade practices allegation is "conclusory" and should be dismissed in accordance with Fed.R.Civ.P. 8(a). *See* Pl.Mem. at 17.

There is some truth to this contention yet, while Count V certainly rambles, its incorporation of the allegations asserted in Count II—a count that survives this motion to dismiss, *see* Countercl. ¶ 54—complies with the federal pleading requirements. *See* Fed.R.Civ.P. 10(c) ("Statements in a pleading may be adopted by reference in a different part of

---

4. At this juncture then, the Court does not address Learning Express' argument that the Counterclaim is "deficient with respect to scienter." Pl.Mem. at 12.

5. As the Court dismissed Ray–Matt's negligence claim, it expresses no opinion as to whether the Theft Statute can be relied upon to establish a standard of care.

6. As an additional basis for the claim, Count V reasserts allegations of misrepresentation and fraud. As these assertions suffer the same fate as the allegations of misrepresentation and fraud in Count III, i.e., insufficient particularity, reliance cannot be placed upon

them to support a claim for unfair trade practices, and thus they are stricken. *See Mead Corp. v. Stevens Cabinets, Inc.,* 938 F.Supp. 87, 90–91 (D.Mass.1996) (Ponsor, J.) (dismissing chapter 93A claim based on fraud allegations that failed Rule 9[b] requirements).

Apparently as another basis for this claim, Ray–Matt asserts that the "agreements obtained from [Ray–Matt] as aforesaid are contracts of adhesion which contain unreasonable and conscionable [sic] terms and which are void as against public policy." Countercl. ¶ 61. The vague reference to "aforesaid" agreements renders this allegation particularly incomprehensible and the Court strikes it as immaterial pursuant to Fed.R.Civ.P. 12(f).

the same pleading....").  The major problem with this Count lies in its failure to designate the body of law it seeks to invoke.  If reference is sought to be made to Mass.Gen.Laws ch.  93A, § 11, the count is flawed because the conduct complained of took place primarily in New Jersey. *See Clinton Hosp. Assoc. v. Corson Group, Inc.*, 907 F.2d 1260, 1265 (1st Cir.1990).  If, however, Ray–Matt is invoking New Jersey's consumer fraud statute, N.J.Stat.Ann. § 56:8–1 et seq., this Count is surplusage in light of Count VIII.  Either way, this Court GRANTS Learning Express' motion to dismiss Count V of the Counterclaim.

### H.  *Count VI—Tortious Interference with Contractual Relations*

■ Incorporating by reference all previous allegations, Count VI of the Counterclaim alleges that Learning Express' "actions constitute a tortious interference with [Ray–Matt's] contractual relations."  Countercl. ¶ 64.  The only mention of a potentially breached contract with a third party in the entire Complaint, however, is Ray–Matt's vague statement that Learning Express "utiliz[ed] their superior bargaining power to obtain from and to terminate [Ray–Matt's] first right of refusal to certain additional locations."  Countercl. ¶ 56.  A review of the Agreement suggests that Ray–Matt actually is referring to Learning Express' refusal to grant consent for relocation under section 3, rather than the termination of a contract between Ray–Matt and some third party. *See* Compl., Ex. A, §§ 3.01, 3.04.  If so, this allegation more properly constitutes "evidence" of its own contractual obligations. *See* n. 1, *supra.*  Since there is no adequate allegation of a terminated contract with a third party, the Court granted Learning Express' motion to dismiss Count VI of the complaint.[7]

7.  At oral argument, counsel for Ray–Matt indicated that some third-party contractual arrangements may have existed.  The Court will

### I.  *Count VII—Negligence*

■ Count VII of the Counterclaim alleges that Learning Express "carelessly, negligently, and recklessly performed their duties" to provide Ray–Matt with guidance, training, and assistance with site selection.  Countercl. ¶ 70.  By its motion, Learning Express challenges this negligence claim because the "relationship between Ray–Matt and Learning Express is defined and governed by a written Franchise Agreement."  Pl.Mem. at 15.  Although persuasive, the Court need not consider this argument because Ray–Matt has alleged neither personal injury nor property damage resulting from Learning Express' alleged negligent acts.  Under Massachusetts law, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395, 613 N.E.2d 902 (1993); *accord Boyes v. Greenwich Boat Works, Inc.*, 27 F.Supp.2d 543, 550 (D.N.J.1998) (holding as settled principle under New Jersey law that contract remedies are "better suited than tort law to resolve claims for economic loss").  This Court thus granted Learning Express' motion to dismiss Count VII of the Complaint with leave to file a motion to amend that alleges non-economic loss.

### J.  *Count VIII—Consumer Fraud*

The final count of the Counterclaim alleges that Learning Express' conduct constituted consumer fraud in violation of N.J.Stat.Ann. § 56:8–1 et seq.  Learning Express correctly asserts that, regardless of the sufficiency of this claim under the New Jersey Consumer Fraud Act, it suffers from the same lack of particularity that proved fatal to Ray–Matt's allegations of fraud and deceit in Count III. The time and place requirements of Fed.R.Civ.P. 9(b) are not met and this Court thus grant-

entertain a motion for leave to amend the Counterclaim that includes more specific descriptions of such arrangements.

ed the motion to dismiss Count VIII with leave to file a motion to amend.

## V. CONCLUSION

To recapitulate, this Court:

1. STRIKES Paragraph 61 from the Counterclaim as immaterial.

2. REDESIGNATES Paragraph 63 as an avoidance.

3. GRANTS Learning Express' motion to dismiss the remaining allegations of Counts I, III, IV, V, VI, VII and VIII.

4. GRANTS Learning Express' motion to dismiss the remaining allegations of Count II with respect to claims asserted by the Hanrattys.

5. DENIES Learning Express' motion to dismiss the remaining allegations of Count II with respect to claims asserted by Ray–Matt.

6. GRANTS Ray–Matt leave to file a motion to amend the Counterclaim within 30 days of the date of this order.

SO ORDERED.