**In re SMARTALK TELESERVICES, INC. SECURITIES LITIGATION,**

**This Document Relates To: All Actions Particularly USDC Massachusetts Case Nos.: 99CVH11499EFH (5S Trust I).**

**No. 00–1315.**

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 1, 2000.

Greg May, Munsch Hardt Kopf Harr & Dinan, PC, Dallas, TX, Richard Stuart Wayne, Strauss & Troy, Cincinnati, OH, Maribeth Deavers, Martin Pergram & Browning, Worthington, OH, Marilyn Ruth Donoff, M.R. Donoff and Associates, Dayton, OH, Lionel Z. Glancy, Lionel Z. Glancy Law Offices, Los Angeles, CA, William S. Lerach, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Kevin P. Roddy, Milberg Weiss Bershad Hynes & Lerach, Los Angeles, CA, Stephen Richard Basser, Barrack Rodos & Bacine, San Diego, CA, Kurt B. Olsen, Kurt Olsen Law

Offices, Washington, D.C., James F. Koehler, Gallagher Sharp Fulton & Norman, Cleveland, OH, Richard S. Schiffrin, Schiffrin Craig & Barroway, Bala, Cynwyd, PA, Jeffrey H. Squire, Kaufman Malchman Kirby & Squire, New York City, Stanley M. Grossman, Pomerantz Haudek Block & Crossman, New York City, Robert N. Kaplan, Kaplan Kilsheimer & Fox, New York City, Joel Sanford Taylor, Dinsmore & Shohl, Columbus, OH, Anthony J. Celebrezze, Jr., Dinsmore & Shohl, Columbus, OH, for plaintiffs.

Ann E. Bennington, Hahn Loeser & Parks, Columbus, OH, Boris Feldman, Bredhoff & Kaiser, Washington, D.C., Keith Eggleton, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Thomas Leslie Long, Baker & Hostetler, Columbus, OH, John J. Kulewicz, Vorys Sater Seymour & Pease, Columbus, OH, for defendants.

### *OPINION AND ORDER # 3*

SARGUS, District Judge.

This matter is before the Court on the Individual Defendants' Motion to Dismiss the SmarTel Complaint. For the reasons that follow, the Court GRANTS IN PART AND DENIES IN PART the Defendants' Motion.

## I. Background.

### A. Overview.[1]

Plaintiffs in this action (the "SmarTel Plaintiffs") were each shareholders in SmarTel Communications, Inc. ("SmarTel"). The founders of SmarTel, Jonathon, Craig and Clifford Slater (the "Slaters"), are a subset of the SmarTel Plaintiffs. In May 1997, SmarTel was purchased by SmarTalk Teleservices, Inc. ("SmarTalk") in a stock for stock transfer. In 1998, after SmarTalk revealed significant accounting problems, the value of SmarTalk stock plummeted and SmarTalk eventually filed for Bankruptcy. Plaintiffs filed suit alleging, *inter alia,* that SmarTalk officers and directors, named as Defendants herein, presented a false picture of SmarTalk through various public statements. According to the Plaintiffs, the Defendants falsely stated SmarTalk's revenues and profits in SEC filings and contract negotiations. The Defendants allegedly did this in order to inflate the value of SmarTalk stock so that SmarTalk could use the stock to acquire other companies, including SmarTel, and so that the individuals could sell their personal holdings in SmarTalk stock at an inflated price. The Plaintiffs have brought this action against certain of the officers and directors of SmarTalk (the "the Individual SmarTel Defendants") and SmarTalk's outside auditor PricewaterhouseCoopers ("PwC") raising tort claims and claims based on the Securities and Exchange Act of 1934 (the "Act").

PwC has filed a separate Motion to Dismiss which the Court has addressed in a separate Opinion and Order. (*See* Opinion and Order # 1). In addition, the Court has considered a Motion to Dismiss by a similar set of Individual Defendants that is directed at the Class Complaint filed in this consolidated action by a set of Plaintiffs who acquired SmarTalk stock in transactions unrelated to SmarTel. (*See* Opinion and Order # 2). The Court now considers the Individual SmarTel Defendants' Motion to Dismiss the SmarTel Complaint.

### B. The SmarTel Acquisition.

In late 1992, the Slaters began a company to resell long distance phone business.

---

1. This section describes the factual allegations contained in the Complaint which the Individual Defendants have moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). As discussed, *infra,* at § II.A, this Court must assume, for purposes of this Motion, that all the allegations are true. Further, all inferences are to be drawn in favor of the non-moving parties.

(Complaint at ¶ 66).[2] That company became SmarTel. In 1997, SmarTalk, through its President, Defendant Erich L. Spangenberg, and Chairman, Defendant Robert H. Lorsch, expressed an interest in acquiring SmarTel. (*Id.* at ¶ 72).

Spangenberg and Lorsch informed the Plaintiffs that SmarTalk was poised for a string of acquisitions that would lead to rapid growth in the size of SmarTalk and its stock price. (*Id.* at ¶ 77). SmarTel was the first target of this acquisition strategy, (*Id.* at ¶ 77), a strategy that allegedly motivated SmarTalk to misrepresent its financial strength in order to unjustifiably inflate the value of SmarTalk stock as leverage in acquisition negotiations. (*See, e.g., id.* at ¶ 131). According to the Complaint, during the course of the negotiations with SmarTel, Spangenberg and Lorsch represented the value of the SmarTalk stock based on SmarTalk's financial statements from 1996.

For its part of the due diligence inquiry conducted in connection with the acquisition negotiations, SmarTel "acquired access to and reviewed certain publicly filed documents including the audited financial statements of SmarTalk for the year-end 1996 as well as its quarterly reports." (*Id.* at 78). These financial statements as well as audit opinions and other documents provided to the SmarTel Plaintiffs as part of the due diligence at the time of the acquisition allegedly overstated revenues and improperly calculated gross profits. (*Id.* at ¶¶ 79, 139–150). Specifically, the Plaintiffs allege that SmarTalk's 1996 financial statements contained accounting errors because they (i) inflated SmarTalk's revenues by improperly including phone card minutes that were attributable to free promotional phone cards, thereby overstating the number of purchased minutes, (ii) inflated earnings by improperly listing marketing

expenses as capital expenditures; and (iii) failed to disclose material inadequacies in SmarTalk's systems of internal controls. (SmarTel Complaint at ¶ 137). These errors directly and adversely impacted the value of the SmarTalk stock the Plaintiffs received through the Acquisition.

On May 28, 1997, in reliance on the above documents, the Plaintiffs entered the agreement to sell SmarTel to SmarTalk in a stock for stock transfer (the "Acquisition Agreement.") (*Id.* at ¶ 81). Pursuant to the Acquisition Agreement, each of the Slater Brothers received an employment contract as well as securities. (*Id.* at ¶ 83–90).

Also, as part of this transaction, the Slaters received Contingent Value Rights ("CVRs"). According to the terms of the Acquisition Agreement, the CVRs, which would be paid to the Slaters in SmarTalk stock, were payable based on the revenues generated by the SmarTel Division over a five year period. "Revenue" was defined by the CVR certificates. According to the Complaint, because the number of shares to be paid under the CVRs was not capped and could increase to the extent that revenue increased, the CVRs potential value was "unlimited." In addition, because the number of shares to be paid was determined by an equation that valued SmarTalk stock at $14 per share, the value of the CVRs could also increase as the SmarTalk stock itself increased in value. Pursuant to the CVR schedule, if the Slaters were able to generate revenue growth at half the rate they had prior to the Acquisition, the CVRs would collectively be worth in excess of $6 million. (*Id.* at ¶¶ 83–87).

## C. The April 1998 Agreement and the 1997 Financials.

During the next year, a dispute arose between the Slaters and SmarTalk that

---

2. Specifically, the Slaters went into the phone card business. (*Id.* at ¶ 66). A phone card is a credit card sized plastic card, imprinted with a company logo on the front and instructions for use on the back. The card holder uses the card to make long distance phone calls by dialing a toll free number listed on

the back of the card, entering a personal identification number and then dialing the desired destination number. (*Id.* at ¶ 67). Most all phone cards offer a predetermined number of minutes of calling time, and minutes are debited from the card's minute balance as calls are made. (*Id.*)

resulted in a settlement agreement. (the "April 1998 Agreement.") (*Id.* at ¶¶ 91–114, Exh. E). Under the terms of the April 1998 Agreement, the Slaters agreed to a mutual release of claims in exchange for, *inter alia:* (1) new employment contracts; (2) 100,000 additional shares of SmarTalk stock; (3) options to purchase up to 125,000 shares of SmarTalk stock; and (4) a promise that SmarTalk would register all stocks of the Plaintiffs within 90 days. (*Id.* at ¶ 115). Unbeknownst to the Slaters, the audited financial statements for 1997 and the first quarter of 1998 contained material misstatements that falsely reported SmarTalk's results and directly and adversely affected the value of the stock they received as consideration for the 1998 Agreement. (*Id.* at ¶¶ 120, 130, 158–200). According to the SmarTel Complaint, had these misstatements been known to the Slaters they would not have entered the 1998 Agreement. (*Id.*)

On August 10, 1998, SmarTalk disclosed in a press release that its outside auditor, PricewaterhouseCoopers ("PwC"), had discovered "significant issues with the Company's accounting treatment for acquisitions." This was the first time that the Plaintiffs had learned of SmarTalk's accounting problems. The SmarTel Complaint alleges that the `Slaters believed they had received securities worth $4.1 million dollars worth of stock pursuant to the 1998 Agreement when in fact they had received less than $200,000 worth of stock.

Specifically, the Slaters allege that SmarTalk fraudulently inflated SmarTalk's reported revenues and/or earnings by:

- improperly categorizing as ordinary "goodwill" at least $88.9 million of intangible assets purchased during four of SmarTalk's 1997 acquisitions so that associated purchase price could be amortized over 15–20 years rather than 2–10 years, thereby reducing the amortization expenses and increasing earnings (SmarTel Complaint at ¶¶ 160–65);

- taking "big bath" one-time charges totaling $64.2 million in connection with SmarTalk's December 1997 acquisition of ConQuest Telecommunications Services Corp. ("ConQuest")—equal to the entire purchase price—allowing defendants to inflate later period earnings by improperly transferring expenses incurred in these later periods back into the charge previously recorded as capital, rather than operating, expenses, (*Id.* at ¶¶ 166–170);

- accounting for acquisitions in 1997 involving the issuance of SmarTalk shares by improperly using the share price on the day of the announcement rather than the three day average of the share prices spanning the announcement of the transaction resulting in a lower acquisition cost to SmarTalk—thereby reducing amortized goodwill expenses by $7 million, (*Id.* at ¶¶ 171–73);

- improperly reporting at least $10.9 million in marketing expenses, paid to manufacturers and retailers to carry SmarTalk's product, as capital expenses thereby spreading the expense associated with these items over a number of years rather than properly incurring these expenses in fiscal year 1997 and the first and second quarters of 1998, (*Id.* at ¶¶ 174–77);

- improperly recognizing the deferred revenues and breakage revenues of the companies SmarTalk acquired in 1997, (*Id.* at ¶¶ 178–83);

- failing to write off impaired or uncollectable accounts receivable, (*Id.* at ¶¶ 184–87);

- creating a sham sale of SmarTalk's money-losing call center operations at a price of $20 million to a related party that had no prior material operations or assets and thus lacking in any ability to pay, (*Id.* at ¶¶ 188–92);

- improperly accounting for revenue from products that did not generate revenue (*Id.* at ¶¶ 193–97).

• failing to maintain adequate internal controls to support its acquisition strategy (*Id.* at ¶¶ 198–200).

According to the Complaint, SmarTalk's dissemination of false financial statements in 1997 and 1998 artificially inflated the market price of SmarTalk's stock. During a seven month time frame when the above described false statements were disseminated, the SmarTalk officers and directors sold over 2.7 million personally held shares of SmarTalk stock for over $63 million. (SmarTel Complaint at ¶ 125). The misstatements and corresponding sales of stock make up the heart of the Slaters' claims against the Defendants based on the 1998 Agreement.

### D. The Defendants.

The Individual SmarTel Defendants include numerous officers and directors of SmarTalk. Defendant Robert H. Lorsch was the Chairman of the Board and until February 1998 the Chief Executive Officer of SmarTalk. Lorsch signed SmarTalk's Form 10–K reports for the fiscal years ending December 31, 1996 and December 31, 1997. He also signed the May 15, 1998 S–3/A that registered certain stock then-owned by or held for the beneficial interest of the Slater Brothers (the "Shelf Registration"). During the time frame in question, Lorsch also sold 1.95 million shares of SmarTalk stock for $42.2 million. (SmarTel Complaint at ¶ 52).

Defendant Erich L. Spangenberg was a director of the Company and Vice Chairman of the Board from 1997 through SmarTalk's bankruptcy in January 1999 and Chief Executive Officer from February 1998 through SmarTalk's bankruptcy in January 1999. Spangenberg was personally involved in and took controlling roles in the negotiation, execution and performance of the contracts and agreements described above. Spangenberg signed the company's Form 10–K for the 1997 Shelf Registration. (*Id.* at ¶ 53). Spangenberg sold no stock during the relevant time frame.

Defendant Glen Andrew Folck served as SmarTalk's Chief Financial Officer until August 1998. Folck signed the Company's Form 10–K for 1997 and the Shelf Registration. In January, 1998, Folck sold 50,000 shares for over $1.15 million during the relevant time frame. (*Id.* at ¶ 59).

Defendant Robert M. Smith was a director of SmarTalk from May 1997 through SmarTalk's bankruptcy in January 1999. Since February 1998, Smith served as a member of the Audit Committee. The Audit Committee is vested with responsibility for: (i) reviewing the accounting practices of the Company and consulting with the independent auditors concerning the Company's financial statements, accounting and financial policies and internal controls; (ii) reviewing the scope of the independent auditors' activities and the practices of the independent auditor; and (iii) maintaining good communications among the Audit committee, the Company's independent auditors and the Company's management on accounting matters. Smith directly participated in the negotiations with the Slaters regarding the acquisition of SmarTel. Smith signed the Company's Form 10–K for the 1997 fiscal year and the Shelf Registration. During March of 1998, Smith sold 15,000 shares of SmarTalk stock for over $465,000. (*Id.* at ¶ 56).

Defendant Fred F. Fielding was a director of SmarTalk. Fielding signed the Company's Form 10–K for fiscal years 1996 and 1997. He also signed the Shelf Registration. Fielding was also one of two members of SmarTalk's Audit Committee. During March 1998, Fielding sold 28,240 shares of SmarTalk stock for over $850,000. (*Id.* at ¶ 55).

Defendant Ahmed O. Alfi was a director of SmarTalk from January 1996 through February 1998. Alfi participated in the negotiations with the Slaters regarding the acquisition of SmarTel. Alfi signed SmarTalk's Form 10–K for 1996, the 10–K Form for 1997, and the Shelf Registration.

Alfi was also a member of SmarTalk's Audit Committee. During October 1997, an investment partnership, of which Alfi is a member and over which Alfi exercises control, sold 180,000 shares of SmarTalk stock for over $4.5 million. (*Id.* at ¶ 58).

Defendant Thaddeus Bereday served as General Counsel for SmarTalk from March 1998 through SmarTalk's bankruptcy in January 1999. According to the Complaint, Bereday was personally involved in and took a controlling role in the negotiations, execution and performance of certain contracts and agreements implicated by Plaintiffs' claims. (*Id.* at ¶ 54).

Defendant Kenneth A. Viellieo served as a director of SmarTalk from February 1998 through SmarTalk's Bankruptcy in January 1999. Viellieo is an employee of the investment bank Donaldson Lufkin and Jenrette ("DLJ"). DLJ served as underwriter for SmarTalk as well as an advisor on the Acquisition, receiving millions of dollars in fees. Viellieo signed the 1997 Form 10–K and the Shelf Registration. (*Id.* at ¶ 57).

### E. The Plaintiffs' Claims.

In Count I, the Plaintiffs assert a claim for securities fraud in violation of section 10(b) of the Act against all of the Defendants except Bereday. The claim is based on the alleged misstatements and misrepresentations the Defendants made in order to induce the Plaintiffs into entering the May 28, 1997 Acquisition Agreement. This claim is based on two sets of alleged misrepresentations. The first is the set of misrepresentations allegedly contained in the 1996 financial statements. The second is the set of oral misrepresentations purportedly made during the negotiations of the Acquisition Agreement and pertaining to the potential value of the CVRs.

In Count II, the Plaintiffs assert a claim for control person liability in violation of section 20(a) of the Act against all of the Defendants except Bereday arising from the 10(b) violations alleged in Count I. Plaintiffs allege that by reason of their positions as directors and/or officers of SmarTalk, the Defendants had the power to cause SmarTalk to engage in the wrongful conduct complained of in Count I.

In Count III, the Plaintiffs assert a claim of negligent misrepresentation against all of the Defendants, except Bereday, based on the same alleged misrepresentations alleged in Counts I and II.[3]

In Count IV, the Slaters assert a claim for securities fraud in violation of section 10(b) of the Act against all of the Individual SmarTel Defendants. This claim is based upon the Plaintiffs' allegations of misrepresentations contained in the 1997 financial statements which induced the Plaintiffs to enter into the April 1998 Agreement that settled the Slaters postacquisition disputes with SmarTalk and the defendants.

In Count V, the Slaters assert a claim for control person liability in violation of section 20(a) of the Act against all of the Defendants arising from the 10(b) violations alleged in Count IV. Plaintiffs allege that by reason of their positions as directors and/or officers of SmarTalk, the Defendants had the power to cause SmarTalk to engage in the wrongful conduct complained of in Count IV.

In Count VI, the Plaintiffs assert a claim of negligent misrepresentation against all of the Defendants based on the same alleged misrepresentations alleged in Counts IV and V.

In Count VII the Plaintiffs assert a claim for conversion against Spangenberg and Bereday.[4] This claim is based on the

---

**3.** Although the Complaint does not explicitly exclude Bereday from this claim, the Plaintiffs have conceded that they are not pursuing this claim against him because he was not employed by SmarTalk during the relevant time period.

**4.** The Complaint states that the claim is also against SmarTalk, but because the Plaintiffs

Plaintiffs' allegations that Bereday and Spangenberg failed to deliver the Slaters' stock when demanded pursuant to the April 1998 Agreement and that Bereday and Spangenberg acted outside the scope of their employment to deprive the Slaters of their ability to sell their stock prior to SmarTalk's bankruptcy.

## II. General Standards Regarding Motion To Dismiss.

### A. Standard For Granting Rule 12(B)(6) Motion.

A Motion to Dismiss for Failure to State a Claim Pursuant to Fed.R.Civ.P. 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the nonmovant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir.1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

### B. Standard for Pleading Securities Fraud.

Allegations of securities fraud must, as must allegations of fraud generally, satisfy the requirements of Rule 9(b) of the Fed-

eral Rules of Civil Procedure. *See* Fed. R.Civ.P. 9(b). Rule 9(b) states as follows:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). Thus, Rule 9(b) requires that fraud be pleaded with particularity. "To satisfy FRCP 9(b), a plaintiff must at a minimum allege the time, place and contents of the misrepresentations(s) upon which he relied." *See Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984). Although Rule 9(b) permits the pleading of a condition of mind generally, allegations of fraudulent misrepresentations must be made with a sufficient factual basis to support an inference that they were knowingly, or recklessly made. *See Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir.1993); *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir.1999).

With respect to statutory securities fraud claims, The Private Securities Litigation Reform Act of 1995 ("PSLRA") supplements the pleading standard set forth in Rule 9(b). The Sixth Circuit Court of Appeals has summarized the effect of PSLRA as follows:

> Despite the application of the Rule 9(b) heightened pleading requirement to securities fraud cases, the Supreme Court recognized long ago that "litigation under Rule 10b–5 presents a danger of vexatiousness different in degree and kind from that which accompanies litigation in general." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739–44, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). As the Court then observed, groundless claims of securities fraud tended to delay the normal business activities of a corporate defendant while the plaintiff conducted extensive discovery of business documents in the hopes of finding

have not named SmarTalk as a defendant, (SmarTel Complaint at ¶ 51) the Court disregards this reference as inadvertent surplusage.

relevant evidence. *See id.* at 741, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539.

In 1995, Congress concluded that Rule 9(b) had "not prevented abuse of the securities laws by private litigants." H.R.Conf.Rep. No. 104–369 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 818. Indeed, Congress echoed the concerns expressed by the Supreme Court in *Blue Chips*, noting that frivolous securities fraud litigation "unnecessarily increase[s] the cost of raising capital and chill[s] corporate disclosure, [and is] often based on nothing more than a company's announcement of bad news, not evidence of fraud." S.Rep. No. 104–98 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690. On December 22, 1995, over the objection of the President, Congress amended the Securities Act through passage of the PSLRA. See Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67 (1995).

The PSLRA amendments to the Securities Act require the following:

> In any private action arising under this chapter in which the plaintiff may recover money damages on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2) (1998). The PSLRA provides that if a plaintiff does not meet this requirement, a court may, on any defendant's motion, dismiss the complaint. *See* 15 U.S.C. § 78u–4(b)(3) (1998). As courts have observed, the PSLRA did not change the scienter that a plaintiff must prove to prevail in a securities fraud case but instead changed what a plaintiff must plead in his complaint in order to survive a motion to dismiss. *See, e.g., In re Glenayre Techs. Inc. Sec. Litig.,* 982 F.Supp. 294, 298 (S.D.N.Y.1997). Indeed, the PSLRA "nowhere defines what the 're-

quired state of mind' is for any of the kinds of actions that might be brought" under the Securities Act. *In re Baesa Securities Litigation,* 969 F.Supp. 238, 240 (S.D.N.Y.1997).

*In re Comshare,* 183 F.3d 542, 548–49 (6th Cir.1999). Thus, the PSLRA is an attempt to limit the cost of securities fraud cases on the securities industry by requiring that plaintiffs in such actions either plead facts sufficient to give rise to a "strong inference" of the necessary scienter or else have their claims dismissed on the pleadings.

### III. Analysis.

The Individual SmarTel Defendants move to dismiss the entire Complaint based on both alleged technical and substantive deficiencies.

### A. Rule 8.

The Defendants move to dismiss the Complaint arguing that it violates Rule 8 of the Federal Rules of Civil Procedure by failing to provide a "short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Defendants assert that it is virtually impossible to match the allegations of purported fact to either the claims for relief or the alleged actors. Defendants further argue that the Complaint does not clearly set forth the claims being asserted, and that the Complaint contains sensational allegations, and that the Complaint is vague with respect to which representations allegedly form the basis of the purported fraud. Finally, the Defendants assert that the Complaint improperly refers to certain unidentified persons in various allegations. The Defendants also request that, in the event that Court dismisses the Complaint without prejudice, the Court consider its arguments in support of a motion for a more definite statement. The Plaintiffs do not specifically respond to each of these assertions, but generally argue that a fair reading of the complaint shows that they have complied with both Rule 8 and Rule 9(b).

Although a Court has discretion to dismiss a Complaint that violates Rule 8, such discretion should be exercised sparingly. *See Azar v. Conley* 456 F.2d 1382, 1391 (6th Cir.1972) ("reversing district Court's dismissal under Rule 8 and acknowledging that such dismissal is warranted only for "gross violations" of Rule 8.")

The Complaint in this case, spanning 101 pages and 287 paragraphs, is not, in the Court's view, a model of appropriate pleading. The document contains a number of the errors pointed out by Defendants, many of which appear to have resulted from the word-for-word incorporation of allegations contained in other Complaints filed in this action. The Federal Rules of Civil Procedure certainly permit the Court to exercise its discretion to strike or dismiss such Complaints. *See Hardin v. American Electric Power*, 188 F.R.D. 509, 511 (S.D.Ind.1999) (if a complaint fails to meet the requirements of Rule 8, we have the power either to dismiss the complaint for failing to state a claim upon which relief may be granted, see Fed.R.Civ.P. 12(b)(6), or to strike those parts that are "redundant, immaterial, impertinent or scandalous.") Although the Complaint is clearly unwieldy, this fact alone is not a basis for dismissal in this case.

Nonetheless, it is elemental that only those persons named as defendants shall be potentially liable in this case. Moreover, only those allegations that are directly related to the Plaintiffs' causes of action stated in Counts I through VI (the Court dismisses Count VII) shall serve as a basis for discovery in this case. Other legal theories of relief such as a breach of contract or wrongful termination, which are referred to in various allegations, but not set forth as separate claims, shall be disregarded.

Finally, in their Memorandum in Opposition ("Memo in Opp."), the Plaintiffs have explained the specific bases for the claims they have brought. (*See* Memo in Opp. at pp. 2–5). The Plaintiffs shall be held to these bases, summarized above at § I.E,

for the remainder of this litigation. In addition, the Plaintiffs have admitted that no claim is predicated on the misstatements included in the 1998 quarterly financial statements, despite allegations pertaining to the same. (Memo in Opp, at p. 12 n. 4, p. 27 n. 9). The 1998 financial statements shall therefore not serve as a basis for liability or discovery in this case. Plaintiffs have also admitted that they "inadvertently" pleaded Counts I, II, and III against Bereday. (Memo in Opp. at p. 1, n. 1). Bereday shall not be liable on any of these counts.

### B. Information and Belief Pleading Requirement.

The Individual Defendants argue that the entire Complaint should be dismissed because it ignores the information and belief pleading requirement imposed by the PSLRA. The PSLRA states that: "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b). The Plaintiffs indicate in their Complaint that they made most of the allegations in the Complaint "upon information and belief information, based, in part, upon the investigation conducted by counsel, which included, *inter alia*, review of applicable contracts, Securities and Exchange Commission ("SEC") filings, news reports, press releases and other publicly available documents." (Complaint at p. 1).

The Court concludes that even if the Complaint is based on information and belief, as laid out below, portions of the Complaint are sufficient to satisfy the pleading requirements set forth by the PSLRA.

### C. 10b Liability.

#### 1. Allegations Regarding the 1996 Financials.

The Defendants argue that the SmarTel Plaintiffs have failed to adequately allege

that the 1996 financial statements were inaccurate. The SmarTel Plaintiffs have alleged that three types of accounting errors in the 1996 financial statements: (i) inflating SmarTalk's revenues by improperly treating free promotional phone cards as revenue producing phone cards, (ii) inflating earnings by improperly reporting marketing costs as capital expenses, and (iii) failing to disclose material inadequacies of SmarTalk's systems of internal controls. (SmarTel Complaint at ¶¶ 137, 139–153). The Defendants argue that the Plaintiffs have failed to provide sufficient particularity as to all three types of errors. With respect to the first two points, the Court has already considered and rejected virtually identical arguments raised by SmarTalk's independent auditor, PricewaterhouseCooper, in its motion to dismiss the corresponding claims the SmarTel Plaintiffs claims have brought against it. (*See* Opinion and Order # 1 at pp. 26–29). Thus, for the same reasons it rejected PwC's arguments, the Court rejects the Defendants arguments here.

■ As for the third point, the Plaintiffs have alleged that SmarTalk failed to maintain adequate internal controls. In support of this allegation, Plaintiffs have four specific examples of how the internal controls were inadequate. (SmarTel Complaint at ¶¶ 198–200).[5] The Defendants' argue that the Plaintiffs have failed to provide any factual support for these examples. The Court concludes that, under the PSLRA and Rule 9, the Plaintiffs are not required to support these examples with additional allegations. The Plaintiffs have adequately supported their contention that SmarTalk failed to maintain internal adequate controls with allegations of four specific examples. Consequently, the Court concludes that the Plaintiffs have adequately pleaded that the 1996 financial statements were inaccurate because they failed to report inadequate internal controls.

## 2. Allegations Regarding Statements Relating the CVRs.

■ The Defendants also move to dismiss Counts I and II to the extent that it is based on alleged statements relating to the potential value of the CVRs.[6] The Plaintiffs appear to advance two separate, albeit related, theories with respect to the CVRs: first, that the Defendants misrepresented the CVRs' potential value and second that the Defendants misrepresented the opportunities that the Plaintiffs would have to increase the value of the CVRs. The Defendants argue, *inter alia,* that the Complaint does not identify any documents or sources showing that these statements were false when made.

There are numerous deficiencies in the Plaintiff's position regarding the CVRs. First, Counts I and II are brought by all

---

5. Specifically, the Plaintiffs allege the following examples of internal control deficiencies: (1) SmarTalk's financial reporting process was substantially a manual process that did not contain any of the system based checks and balances that exist in available software and that required multiple handling of data; (2) SmarTalk lacked the ability to successfully integrate the computer systems and accounting systems of acquired companies due to the inadequate experience and size of SmarTalk's accounting staff; (3) SmarTalk did not maintain a formal, written manual on the accounting policies and procedures governing its financial reporting processes; and (4) SmarTalk's various data and information systems were poorly integrated. (SmarTalk Complaint at ¶ 152(a)–(d)).

6. In their Memorandum in Support of their Motion to Dismiss, the Defendants identify as potential bases of Plaintiffs' securities fraud claims both an alleged representation by Spangenberg and Lorsch that SmarTalk was well-positioned to absorb growth and take advantage of the opportunities presented and alleged statements regarding the registration of the Plaintiffs' SmarTalk stock as potential bases for Plaintiff's fraud claims. (SmarTel Complaint at ¶ 77.) The Plaintiffs have not presented these statements as a basis for their claims, nor have they responded to Defendants' pertinent arguments. Therefore, the Court disregards these portions of the Defendants' Motion and concludes that Plaintiffs' claims are not based on these statements.

of the SmarTel Plaintiffs but only the Slaters received CVRs pursuant to the Acquisition Agreement. (SmarTel Complaint at ¶ 83). Next, the value of the CVRs was tied to the future performance of the SmarTel division of SmarTalk. The Complaint contains numerous allegations describing the CVRs but no allegations regarding any representations by the Defendants relating to the CVRs' potential value. (*See id.* at ¶¶ 83–87).[7] Even if these descriptions were representations by the Defendants, the allegations themselves reveal just how speculative the value of the CVRs was. The allegations make clear that the CVRs "potential value" was tied to future contingencies relating to the performance of SmarTel rendering any statements about their value were necessarily a mere prediction. *Wenger v. Lumisys, Inc.,* 2 F.Supp.2d 1231, 1250 (N.D.Cal. 1998); *Zimmerman v. Kent,* 31 Mass.App. Ct. 72, 575 N.E.2d 70 (1991). Without specific allegations of fact to show that the Defendants knew that these statements were false, such statements cannot be taken as false. The Plaintiffs have failed to identify any such specific facts.

The Plaintiffs also allege that the Defendants misrepresented the level of opportunity that the Plaintiffs would be given to grow the SmarTel division's business, thereby increasing the value of the CVRs. According to the Complaint, Lorsch and Spangenberg attempted to undermine the value of the CVRs by obstructing the performance of the SmarTel division of SmarTalk almost immediately after the merger. The Plaintiffs argue that these actions, and the proximity to the alleged misrepresentations, show that Lorsch and Spangenberg's alleged representations were false when made. The Court disagrees. The

"representations" at issue are not statements regarding a past or existing fact but rather are better characterized as promises or commitments of future performance. Such statements and alleged subsequent conduct, although possibly a breach of contract or a lack of good faith, does not constitute a claim for fraud without specific facts showing that the promises were false when made. *Zimmerman v. Kent, supra.* The Plaintiffs have failed to plead such facts Thus, the Court rejects the alleged misrepresentations pertaining to the CVRs as a basis for Plaintiff's fraud claims or other misrepresentations claims.

### 3. Scienter.

Defendants argue that the Plaintiffs have not adequately alleged scienter.

### a. Standard For Pleading Scienter in Security Fraud Cases.

■ The parties rely on *In re Comshare,* 183 F.3d 542 (6th Cir.1999) to define the standard for pleading scienter and for the definition of scienter. *In re Comshare* was a consolidated securities fraud action arising from Comshare's restatement of certain financial statements after the company acknowledged that original financial statements contained revenue recognition errors. The errors were based on a subsidiary's violation of company policy and generally accepted accounting principles ("GAAP") that proscribed the inclusion in financial statements of revenue from sales that were not assured. The subsidiary had been recognizing revenues from sales that were conditioned by side letter agreements allowing the buyer to back out of the sale under certain circumstances. When Comshares discovered the side let-

7. Specifically, the Complaint contains descriptions of the terms of the CVRs based on the Acquisition Agreement and the certificates. The Complaint also includes allegations describing the CVRs' "potential value" as the consideration for the Acquisition Agreement. However, none of these descriptions is alleged to be a statement or representation by any of the Defendants. Indeed, the allegation

that comes closest to attributing this information to statements by the Defendants is the Plaintiffs' general allegation that Defendant Spangenberg participated in the negotiation of the Acquisition Agreement. (SmarTel Complaint at ¶ 52). This reference is too vague to tie the CVR information to any particular statement by Spangenberg.

ter agreements, it was forced to announce that it had overstated its recognized revenue causing the market value of the stock to drop significantly. The plaintiff-shareholders brought claims of securities fraud under 10(b) and based such claims on allegations demonstrating a motive and opportunity to commit the alleged fraud. The district court granted the defendants' motion to dismiss the claims finding that the plaintiffs had failed to plead facts establishing a "knowing misrepresentation" by the defendants. The Court of Appeals affirmed the district court but rejected the lower court's rationale, adopting a more lenient standard for scienter, a standard that the plaintiff had nonetheless failed to satisfy.

Specifically, the *Comshare* Court held that:

> [W]e conclude that plaintiffs may plead scienter in § 10b or Rule 10b–5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud. Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs must "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10(b) or Rule 10b–5.

183 F.3d at 549. Thus, to survive a motion to dismiss, plaintiffs are not required to "allege facts giving rise to a strong inference of knowing misrepresentation or intent." 183 F.3d at 552. On the other hand, "plaintiffs may meet PSLRA pleading requirements by alleging facts that give rise to a strong inference of *reckless behavior* but not by alleging facts that illustrate nothing more than a defendant's

motive and opportunity to commit fraud." 183 F.3d at 551.[8]

■ The Sixth Circuit defined "recklessness" as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." 183 F.3d at 550. This definition demonstrates that recklessness is beyond negligence. On the other hand, reckless behavior is not intentional or knowing behavior because the danger need not have been actually known. As between these two standards, the Court made clear that recklessness is closer to intent than it is to negligence. 183 F.3d at 550, n. 7 ("recklessness ... is far from negligence and closer to a lesser form of intent.").

### b. Application of the Scienter Standard.

■ In connection with a similar set of Individual Defendants' motion to dismiss the Class Complaint in this consolidated case, the Court concluded the Class Plaintiffs had adequately alleged scienter with respect to the 1997 financial statements. (*See* Opinion and Order # 2 at pp. 18–24). This conclusion was based on a combination of the accounting errors alleged and insider trading at unusual levels and suspicious times. The SmarTel Plaintiffs' allegations are sufficiently similar to the Class Plaintiff's allegations that the Court concludes that the SmarTel Plaintiffs have adequately alleged scienter with respect to the 1997 financial statements. Consequently, the Court DENIES the Defendants' Motion to Dismiss Count IV.

As for the 1996 financials, the Court cannot reach the same conclusion for a number of reasons. First, the accounting errors alleged with respect to the 1996 financial statements do not support an inference of scienter as strongly as the ac-

---

8. The Sixth Circuit's point with respect to motive and opportunity is subtle: the statute requires scienter for liability and not just mo-

tive and opportunity; nonetheless, facts showing motive and opportunity may "on occasion" give use to an inference of scienter.

counting errors alleged with respect to the 1997 financial statements. Initially, the claims made by the Plaintiffs with regard to the 1996 financial statements are far less egregious than those alleged with regard to the 1997 financial statements. In addition, because the 1996 financial statements were never restated, no inference can be drawn from the time it took a second auditing team to reveal the accounting errors in those statements. Second, and more important, the insider trading allegations do not support scienter with respect to the financial statements for the fiscal year ending December 31, 1996 because no insider training occurred until August 1997. (SmarTel at ¶ 125). Moreover, the majority of the insiders did not sell off their stock until 1998. Thus, the timing of the trading does not support the inference that the false statements in the 1996 financial statements were made with scienter.

Again, in order to state a claim for securities fraud, it is not sufficient to merely allege with particularity that false statements were made. Rather, a plaintiff must allege that the statement was made with scienter. As discussed above, the requisitie scienter is, at a minimum, recklessness. In this case, although the Plaintiffs have adequatetly pleaded that the 1996 financial statements contained false statements, they have not adequately pleaded that these statements were made with scienter.

Consequently the Court GRANTS the Defendants Motion to Dismiss Count I. In addition, because Count II is based on the 10(b) violation alleged in Count I, the Court also GRANTS the Defendants' Motion to Dismiss Count II.

### 5. Group Publication.

The Defendants argue that the non-speaking Defendants, (i.e., the Defendants who are not alleged to have participated in the negotiation of the contracts at issue,)[9] cannot be liable for the alleged misstatements. In response, the Plaintiffs have invoked the group published doctrine, albeit for the wrong purpose. The Plaintiffs attempt to argue that the group published doctrine can be used to demonstrate that the non-speaking defendants had actual knowledge that the statements at issue were false.

■ The group published doctrine applies in cases of corporate fraud where officers and directors of the corporation are held liable for false statements found in group published documents. The doctrine has been summarized as follows:

> In cases of corporate fraud where the false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the officers [citations omitted]. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). Thus, the group published doctrine erects a presumption that certain officers and directors participated in the making of false statements contained in group published corporate documents.

■ The Defendants argue that the Group Published Doctrine did not survive the passage of the PSLRA and that even if it did, it does not apply to the Nonspeaking Defendants. In addressing a similar set of Defendants' Motion to Dismiss the Class Complaint in this consolidated ac-

9. According to the Defendants, these Defendants include Bereday, Alfi, Fielding, Smith and Viellieo. The Court notes that the Complaint does allege, at least generally, that Alfi, Bereday, and Smith participated in the negotiations. Nonetheless, the Court assumes for the purposes of this decision that in fact these defendants are non-speaking defendants.

tion, the Court concluded that the group published doctrine did in fact survive the passage of the PSLRA. The Court adopts this conclusion here. (*See* Opinion and Order at p. 29.)

■ Moreover, the Defendants' arguments that the group published doctrine does not apply to Defendants Bereday, Alfi, Fielding, Smith and Viellieo are virtually identical to the arguments that this Court rejected. (*See* Opinion and Order # 2 at p. 29–31). Thus, for the same reasons previously enunciated, the Court concludes that the group published doctrine does apply to the Defendants Bereday, Alfi, Fielding, Smith and Viellieo. Consequently, and for the reasons stated above, the Court DENIES the Defendants Motion to Dismiss Count IV of the Complaint insofar as it relates to the Nonspeaking Defendants.[10]

### D. Negligent Misrepresentation.

The parties agree that Massachusetts law applies to Defendants' negligent misrepresentation claims. Nor is there any disagreement that Rule 9(b) applies to Plaintiffs' negligent misrepresentation claims. *See, e.g., Lindner v. Dividend Fund. Inc. Ernst & Young*, 880 F.Supp. 49, 57 (D.Mass.1995).

■ Under Massachusetts law, recovery for negligent misrepresentation requires the plaintiffs to prove that the defendants supplied them false information for their guidance, upon which information the plaintiffs justifiably relied, resulting in pecuniary loss to the plaintiffs, and that the defendants failed to exercise reason-

able care or competence in obtaining or communicating the information. *See, e.g., Nota Constr. Corp. v. Keyes Associates, Inc.*, 45 Mass.App.Ct. 15, 19–20, 694 N.E.2d 401, 404 (1998). "A statement on which liability for misrepresentation may be based must be one of fact, not of expectation, estimate, opinion, or judgment." *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 575 N.E.2d 70 (1991). "A fact is something 'susceptible of knowledge.' " *Id.* (citing *Chatham Furnace Co. v. Moffatt*, 147 Mass. 403, 406, 18 N.E. 168 (1888); *Yorke v. Taylor*, 332 Mass. 368, 371, 124 N.E.2d 912 (1955); *Acushnet Fed. Credit Union v. Roderick*, 26 Mass.App.Ct. 604, 605, 530 N.E.2d 1243 (1988)).

The Defendants argue that the Plaintiffs' negligent misrepresentation claims should be dismissed because they have failed to allege that the Plaintiffs were in privity with the Defendants or, alternatively, that the Defendants had actual knowledge that the Plaintiffs would rely on their misrepresentations. The Plaintiffs do not dispute that they are not in privity with the Individual Defendants because the Acquisition Agreement and the Settlement Agreement were entered into with SmarTalk. *See, e.g., Austin v. Bradley, Barry, & Tarlow P.C.*, 836 F.Supp. 36, 40 (D.Mass.1993).[11] Instead, the Plaintiffs claim that the Defendants had actual knowledge that the Plaintiffs would rely on the Defendants' misrepresentations.

■ Count III is based on the false statements allegedly contained in the 1996 financial statements and the alleged misrepresentations pertaining to the CVRs. The Court concluded above that the allega-

---

10. The parties also disagree over whether allegations of control person liability can serve as a basis for pleading scienter. Although the Plaintiffs are correct that allegations regarding the Defendants' corporate positions tend to support an inference of scienter, they do not support a strong inference and do not, in this case, save the Plaintiffs claims based on the 1996 financial statements. The Court also notes that aside from the Defendants' argument in this regard, the Defendants have not moved to dismiss the Plaintiffs's control per-

son liability claims on any basis independent of their motion to dismiss the 10(b) claims.

11. Plaintiffs also contend that the Defendants can be personally liable for the alleged negligent acts they committed while in the course of their employment for SmarTalk. The Defendants do not appear to dispute this contention in their Motion. The issue need not be resolved given the conclusion reached by the Court *infra*.

tions pertaining to the statements regarding the CVRs are insufficient to support Plaintiffs claims for fraud. For the same reasons the Court concludes that the statements are insufficient to support a claim for negligent misrepresentation. *See In re Fidelity/Apple Secs. Litig.*, 986 F.Supp. 42, 49 (D.Mass.1997) (holding that to satisfy a negligent misrepresentation claim under Massachusetts law, statements must be based on fact and not on predictions about future events, estimates or opinions).

 With respect to the 1996 financial statements, the Defendants argue (1) that the Plaintiffs have failed to adequately plead that these statements were false, and (2) that the Plaintiffs failed to plead that any of the outside directors had actual knowledge that the Plaintiffs would rely on the 1996 financial statements. First, the Court concluded above, *see infra* at § III(c)(1) that the Plaintiffs have adequately alleged that the 1996 financial statement were false when made.

Second, the Court determines that the allegations in the Complaint are sufficient to conclude that Defendants had actual knowledge that the Plaintiffs would actually rely on the 1996 financial statements during the negotiations. The Complaint alleges the parties used the 1996 financial statements to determine the appropriate valuation of the stock in question. Further, the Plaintiffs allege that Folck participated in the "due diligence" investigations performed by both companies prior to the merger. (SmarTel Complaint at ¶ 4, 76, 78). It may be reasonably inferred that the outside directors, who are not alleged to have participated in the negotiations of the Acquisition Agreement, had actual knowledge that the Plaintiffs would rely on the 1996 financial statements by virtue of their positions as directors and officers, their role in signing the financial statements, and their knowledge of SmarTalk's acquisition strategy which included SmarTel as one of its first targets. (*Id.* at ¶¶ 128, 132). These alleged circumstances are minimally sufficient to allow a reason-able inference that all of the Defendants had actual knowledge that the SmarTel Plaintiffs would rely on the 1996 financial statements during the merger negotiations. Thus, the Court DENIES the Defendants motion to dismiss Count III.

 The Plaintiffs' claim for negligent misrepresentation found in Count VI is based on the alleged misrepresentations contained in the 1997 financial statements and relied on by the Slaters in entering the April 1998 Agreement. Defendants argue that (1) the Plaintiffs fail to allege that any of the outside directors had actual knowledge that the Slaters would rely on the 1997 Financial Statements in entering the April 1998 Agreement, (2) no person is alleged to have negotiated the Settlement and Release on behalf of SmarTalk (although Spangenberg signed the document and Bereday is generally alleged to have negotiated unspecified contracts and agreement), (3) even if Spangenberg and Bereday are alleged to have negotiated the April 1998 Agreement, there is no allegation that they knew that the Slaters would rely on the 1997 financial statements in entering the Settlement and Release agreement. The Plaintiffs argue that given the Slaters' potential claims against them, and the Defendants' positions with SmarTalk, it can be concluded that the Defendants knew that the Slaters would be relying on the 1997 financial statements in entering the 1998 Agreement.

The Defendants are correct that Plaintiffs have failed to identify anyone in particular who negotiated the April 1998 Agreement on behalf of SmarTalk. In addition, even if the Plaintiffs had identified the particular person who had negotiated the contract, there is no allegation that suggests that the person actually knew that the Slaters were relying on the misstatements in the 1997 financial statements in entering the agreement. There is no specific allegation in the Complaint that permits even a circumstantial inference that the Defendants were actually aware that the Slaters were relying on the

1997 financial statements. Unlike the allegations with respect to the negotiations of the Acquisition Agreement, there are no allegations that the financials were used to determine the value of the stock being provided nor is there any allegation that the negotiation strategy was generally known to the directors and officers of SmarTalk. Consequently, the Court concludes that the Plaintiffs have failed to state a claim for negligent misrepresentation against the Defendants based on the 1997 financial statement. As a result, the Court GRANTS the Defendants' Motion to Dismiss Count VI.

### E. Conversion.

In Count VII the Plaintiffs assert a claim for conversion against Spangenberg and Bereday. This claim is based on the Plaintiffs' allegations that Bereday and Spangenberg failed to deliver the Slaters' stock when demanded pursuant to the April 1998 Agreement and that Bereday and Spangenberg acted outside the scope of their employment to deprive the Slaters of their ability to sell their stock prior to SmarTalk's bankruptcy.

■ The parties agree that Massachusetts law applies to the Plaintiffs' conversion claims. To state a claim for conversion the Plaintiffs must allege facts that demonstrate that the Defendants wrongfully exercised dominion or control over the property of another which seriously interferes with that person's rights of ownership. *See Schiappa v. Nat'l Marine Underwriters, Inc.,* 1999 WL 788616 at *1 (Mass.App.Div. May 20, 1999).

According to the April 1998 Agreement, SmarTalk was obligated deliver 100,000 shares of SmarTalk common stock. The stock were originally "restricted stock" but the agreement provided that within 90 days from the date of the agreement (April 24, 1998), SmarTalk would the cause the stock to be registered. The Complaint acknowledges that in May, 1998, the stocks were registered. Thus, the Plaintiffs cannot state a claim for wrongful registration because the Defendants registered the stock as required by the April 1998 Agreement.

■ Plaintiffs assert that they had a contractual right to have SmarTalk use its best efforts to facilitate the sale of the stock the Plaintiffs received via the April 1998 Agreement. Plaintiffs assert that from May 1998 through January 1999, Bereday and Spangenberg wrongfully deprived the plaintiffs of the ability to sell their stock: (i) by representing to brokerage houses that the stock could not be sold even if registered because Jonathon Slater was an insider, even though he was no longer employed by SmarTalk, (ii) failing to inform the plaintiffs that the registration statement had been filed, (iii) representing to the Slaters' broker that the registration had expired and no shares could be sold; (iv) affirmatively expressing to the Slaters' Broker that they did not want the Slaters to sell the stock, (v) causing the Slaters to be required to deposit an additional $200,000 in additional collateral to their brokerage accounts as a result of representations made to the Slaters' broker that the stock could not be sold, thereby rendering the stock as worthless collateral. (SmarTel Complaint at ¶ 124.)

The Court concludes that these allegations do not constitute conversion in that no claim is made as to unlawful dominion or control of the stock. First, although the Plaintiffs assert that the Defendants were obligated under the contract to use their best efforts to facilitate the sale of the stock, no such provision is found in the contract. Further, the contract did not contain a requirement that SmarTalk inform the Plaintiffs that the registration occurred. In addition, although the alleged representations may be sufficient to constitute a claim for tortious interference with contract, such allegations do not constitute conversion. The notion of "control" required for the tort of conversion requires serious interference. *See* Restatement of the Law Second, Torts § 222A(1).

The Court concludes this standard is not satisfied by mere statements made to influence a third person's actions with respect to Plaintiffs' property, especially where the third person is the Plaintiffs' agent. Notably, the allegations contain no assertion of ownership of the stock by the Defendants. While the Defendants' statements may have interfered to some degree with the Plaintiffs' ability to sell their shares, the degree of interference is not sufficient for the tort of conversion. Consequently, the Court GRANTS the Defendants Motion to Dismiss Count VII. Because the Court is not, however, convinced that amendment of the claim would be fruitless, the Court grants the Plaintiffs leave to amend their complaint as to this claim only, to refile based on the same or similar allegations, but a different legal theory of relief, assuming such a theory exists.

## IV. Conclusion.

Based on the foregoing, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Defendants' Motion to Dismiss. The Court **GRANTS** the Defendants' Motion to Dismiss Counts I, II, VI and VII. Because the Court concludes that amendment could not cure the defects identified above, Counts I, II, and VI are denied with prejudice. As set forth above, the Plaintiffs may amend their Complaint to replead the claim set forth in Count VII under another theory of relief, assuming one exists. The Court **DENIES** the Defendants' Motion with respect to Counts III, IV, and V.

**IT IS SO ORDERED.**